No.   93-288

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN RE THE MARRIAGE OF

HELEN J. RADA,

      Petitioner  and  Respondent,

  and

FRED A. RADA,

      Respondent  and  Appellant.

FILED

FEB 15 1994

*Ed Smith*

CLERK OF SUPREME COURT.
STATE OF MONTANA

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Joel G. Roth, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

      Patrick F. Flaherty, Esq., Great Falls, Montana

      For Respondent:

      Joan E. Cook, Esq., Great Falls, Montana


                Submitted on Briefs:  January 13, 1994

                            Decided:  February 15, 1994

Filed:

_____
             Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Fred Rada appeals from a dissolution of marriage and property distribution decree entered in the District Court for the Eighth Judicial District, Cascade County. We affirm.

The issues are rephrased as follows:

1. Whether the District Court erred in dividing the marital estate and in determining the values of marital estate property, specifically the pieces of property referred to as the West Hill house, the Tenth Avenue house, the Manchester house, the parties' personal property, bank accounts and various loans.

2. Whether the court erred in denying the request for sanctions against Helen Rada in the amount of $252.

Fred Rada (Fred) and Helen Rada (Helen) were married on November 18, 1950, at Great Falls, Montana. Both brought assets into the marriage, which lasted approximately forty-two years. Together they had four children, all of whom were emancipated at the time Helen filed the petition for dissolution of marriage. At the time of dissolution, Helen worked as a bookkeeper for the Catholic Diocese and at two additional part-time jobs. Fred was self-employed with the Fred Rada Construction Company.

Several legal delays occurred in this case. After filing the petition for dissolution of marriage in June 1988, Helen consecutively employed three attorneys to represent her in the matter. Fred consecutively employed two. Several motions to continue, motions to compel discovery and motions for sanctions were filed by

2

the parties. Three separate trial dates were set and vacated. Trial was finally held in December 1992, approximately four and one-half years after the petition was filed.

The court found the marital estate to be worth approximately $308,000 and evenly divided it between the parties, with each receiving approximately $154,000. The court valued some assets at the time the parties separated, and some assets at the time of dissolution. In its conclusions of law, the court noted:

> The court makes these conclusions after considering the relevant factors set out in Section 40-4-202, MCA. All marital asset values are included in the estate as of the date of dissolution, except for when such action would be unconscionable. (In re the Marriaae of Waaner, 208 Mont. 369, 679 **P.2d** 753 (1984)). Specifically, Helen's **IRA,** Fred's **IRA,** Fred **Rada Construction Checking** Account; Fred's First Bank West Bank Account, Helen's Traveler's Pension and Fred's New York Life Annuity are valued at their June 1988 principle balance with interest added to date at a reasonable rate below or equal to the rates the assets would have earned. [Fred] has agreed to this approach (see [Fred's] Exhibit 16A). (In re the Marriaae of Garst, 199 Mont. 393, 649 **P.2d** 450 (1982)). Although Fred argues that he has only one checking account as of this date, there is ample evidence that he had the checking accounts this Court has included in the marital estate at the time the parties separated. Fred admitted that he has liquidated some banking accounts. This Court finds it equitable for these funds to be included in the marital estate. ([Section] 40-4-202, [MCA]; In re the Marriaae of Merry, 213 Mont. 141, 689 **P.2d** 1250 (1984)).

Fred appeals, alleging that the court incorrectly valued the marital property and therefore erroneously divided the marital estate. Additionally, he claims that the court erred in denying his request for sanctions against Helen in the amount of $252.

3

ISSUE 1

Did the District Court err in dividing the marital estate and in determining the values of marital estate property, specifically the pieces of property referred to as the West Hill house, the Tenth Avenue house, the Manchester house, the parties' personal property, bank accounts and various loans?

On appeal, we review whether the District Court's findings of fact are clearly erroneous and whether its conclusions of law are correct. In re Marriage of Danelson (1992), 253 Mont. 310, 317, 833 P.2d 215, 219-20. When reviewing discretionary trial court rulings, such as marital estate distributions and the valuations of marital property during dissolution of marriage proceedings, we determine whether the District Court abused its discretion. Danelson, 833 P.2d at 220.

The factors to be considered in the division of the marital estate are set forth at § 40-4-202, MCA, which states, inter alia, that the court shall finally and equitably apportion the property of the parties, however and whenever acquired. The statute vests wide discretion in the district court. In re Marriage of Stewart (1988), 233 Mont. 40, 757 P.2d 765. The court is free to adopt any reasonable valuation of marital property which is supported by the record. In re Marriage of Luisi (1988), 232 Mont. 243, 756 P.2d 456.

The trial court has discretion to make an equitable division of the marital estate, using reasonable judgment and relying on

4

common sense. <u>Danelson,</u> 833 P.2d at 220. An equitable distribution is not necessarily an equal distribution. In re Marriage of Scott (1992), 254 Mont. 81, 835 P.2d 710.

Fred essentially argues questions of fact by contending that the court failed to value the marital estate according to his wishes. The court, however, was well within its discretion. Moreover, after reviewing the record in the instant case, we hold that this Court's reasoning in In re Marriage of Wagner (1984), 208 Mont. 369, 378, 679 P.2d 753, 757-58, is applicable here:

> [t]o include in the valuation of the marital estate any accumulation of financial wealth, or, conversely, the increase in financial liabilities of either spouse subsequent to the termination of the "marital relationship" may effectuate an injustice and frustrate the intended purpose of division of marital property.

Because of the circumstances of this case, inherent time delays and the parties' accumulation of assets and liabilities during the interim, we conclude that the District Court did not err in determining appropriate values for the marital estate property: we also conclude that the court did not err in dividing the marital estate.

## ISSUE 2

Did the court err in denying appellant's request for sanctions against Helen in the amount of $252?

Fred alleges the court erred in denying him $252 in sanctions which he requested against Helen for her refusal to answer his discovery requests. Helen asserts that the court found there were

5

excusable time delays (such as her changes of counsel) which kept Helen from answering Fred's discovery requests, and that the court did not abuse its discretion. We agree with Helen. This Court will reverse a trial court's refusal to invoke Rule 37, M.R.Civ.P., sanctions only when the court's judgment materially affected the substantial rights of the parties or allowed a possible miscarriage of justice. See Wolf v. Northern Pac. Ry. Co. (1966), 147 Mont. 29, 409 P.2d 528.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

6