

DA 12-0017

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 245

PETE HORN and ELVA HORN,

      Plaintiffs and Appellants,

    v.

BULL RIVER COUNTRY STORE
PROPERTIES, LLC,

      Defendant, Third-Party
      Plaintiff and Appellee,

    v.

JERRY AMORUSO, Individually and d/b/a
JERRY'S REPAIR,

      Third-Party Defendant and Appellee.

APPEAL FROM:    District Court of the Twentieth Judicial District,
                In and For the County of Sanders, Cause No. DV 10-03
                Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            Christopher Lee Decker, W. Adam Duerk; Milodrogovich, Dale,
            Steinbrenner & Nygren, P.C.; Missoula, Montana

      For Appellee:

            Robert Cameron; Gough, Shanahan, Johnson & Waterman, PLLP;
            Helena, Montana

            C.J. Johnson; Kalkstein, Johnson, & Dye, P.C.; Missoula, Montana

Submitted on Briefs:  August 8, 2012

Decided:  October 30, 2012

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 After a five-day trial in October 2011, a Sanders County jury decided that Appellee Bull River Country Store Properties, LLC, (Bull River) was not negligent in connection with the plaintiffs' claim that it sold water-contaminated diesel fuel. Appellants Pete and Elva Horn (Horn) appeal the Twentieth Judicial District Court's order denying their motion for a new trial. We affirm.

¶2 We restate the issues as follows:

¶3 1. *Is Horn entitled to a new trial because Bull River's reliance on the settled-party defense authorized by § 27-1-703, MCA, violated his due process rights?*

¶4 2. *Did the District Court abuse its discretion when it allowed Bull River to question Pete Horn about his unrelated insurance claims?*

¶5 3. *Did the District Court abuse its discretion when it denied Horn's motion for a new trial based on Bull River's insurance-related arguments?*

¶6 4. *Is Horn entitled to a new trial on the ground of juror misconduct?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶7 Pete Horn filed suit against Bull River and other fictitious defendants on January 6, 2010. Horn alleged that he purchased forty-two gallons of water-contaminated diesel fuel at the Bull River store in Noxon, Montana in late February and early March of 2008. Horn allegedly transported that fuel in five-and-six gallon jugs to his work site in Grand Coulee, Washington, where he used heavy machinery to engage in landscaping work on land owned by his son, Jason Horn. In mid-March 2008, Pete Horn used the

3

diesel fuel from those jugs to fill the fuel tanks of two heavy machines that he owned—a Case W-11 Articulated Wheel Loader (Case) and a Kobelco Sk045 Mini-Excavator (Kobelco). The engines in those machines began to run poorly shortly thereafter.

¶8 Pete Horn and his mechanic, Jerry Amoruso, determined the engine problems were caused by water-contaminated diesel fuel and Horn called Bull River to complain. A Bull River employee informed Horn that the gas station had received multiple complaints regarding recently-sold diesel fuel and invited Horn to call Bull River's owners, Robert and Carol Page. Horn called Carol Page, who told Horn to contact Bull River's insurance company, Farmers Insurance Exchange (Farmers).

¶9 Upon learning from other customers that there was a problem with its diesel fuel, Bull River immediately shut down the diesel fuel pumps and called its diesel fuel supplier, Moore Oil Co., Inc. (Moore Oil), to report the problem. Bull River and Moore Oil each tested Bull River's diesel tank for the presence of water, and each found a small amount of water at the bottom of the tank. Bull River claimed the water was a normal result of condensation and was pooled beneath the pump intake. Moore Oil nonetheless pumped the water out of the tank and replaced the diesel fuel.

¶10 Horn formally reported a claim to Farmers for damages to both his Case and Kobelco machines on April 15, 2008. Ruth Mikulic, an insurance adjuster who worked for Farmers, handled Horn's claim. Mikulic was responsible for resolving eleven other claims against Bull River, all of which involved allegations that diesel fuel purchased at the gas station in late February or early March damaged the engines of various vehicles

4

and pieces of machinery. All eleven of those other claims settled without problem after those claimants submitted documents to Farmers evidencing their repair costs.

¶11 Farmers ultimately tendered to Horn $16,042, but was unable to resolve Horn's remaining claims for damage to his machinery. Horn filed suit against Bull River on January 6, 2010, claiming loss of use damages for both machines during a 1,320-day period that began on March 10, 2008, and ended on the final day of the trial. The parties stipulated that a reasonable rental rate for machines similar to Horn's was $400 per day for each machine. In total, Horn sought damages from Bull River in excess of one million dollars. Horn argued that Farmers, as the agent of Bull River, inadequately investigated the damage to his equipment and delayed payment of his claim. Since he did not have the resources to pay for the equipment repairs himself, Horn claimed he was unable to get back to work without Farmers' payment of the costs.

¶12 Bull River claimed that Horn could not trace water contamination to fuel obtained from its store and that if he did purchase contaminated fuel there, his injuries, if any, were caused by others, including Horn's mechanic and Horn himself for running the damaged engines until they burned up. Bull River also argued to the jury that Horn had failed to prove any negligence by Bull River or the Pages.

¶13 At the conclusion of trial, ten jurors agreed that Bull River was not negligent and the jury returned a defense verdict. Horn filed a motion for a new trial on November 21, 2011, which the District Court denied on December 14, 2011. Horn appeals.

5

**STANDARD OF REVIEW**

¶14 "Our standard of review of a district court's denial of a motion for a new trial depends on the basis of the motion." *Stebner v. Associated Materials, Inc.*, 2010 MT 138, ¶ 11, 356 Mont. 520, 234 P.3d 94. As such, the standards of review are discussed below as applicable to the issues raised. Our review of constitutional questions is plenary. *City of Billings v. Albert*, 2009 MT 63, ¶ 11, 349 Mont. 400, 203 P.3d 828.

**DISCUSSION**

¶15 1. *Is Horn entitled to a new trial because Bull River's reliance on the settled-party defense authorized by § 27-1-703, MCA, violated his due process rights?*

¶16 Although Horn's original complaint named only Bull River and fictitious parties as defendants, Horn later amended the complaint to include Moore Oil and Richard Watts Jr. Trucking, Inc. (Watts Trucking), which had delivered the fuel to Bull River. Horn later settled his claims against Moore Oil and Watts Trucking and those claims were dismissed with prejudice on June 7, 2011.

¶17 After learning that Horn had settled his claims against Moore Oil and Watts Trucking, Bull River sought leave to amend its answer to plead a settled-party defense under § 27-1-703, MCA (2007). That statute provides that in a negligence action, "a defendant may assert as a defense that the damages of the claimant were caused in full or in part by a person with whom the claimant has settled or who the claimant has released from liability." Section 27-1-703(6)(a), MCA (2007). If the defendant asserts a settled-party defense, "the trier of fact shall consider the negligence of persons released

6

from liability by the claimant or with whom the claimant has settled." Section 27-1-703(6)(b), MCA (2007). The settled party then has the "opportunity to intervene in the action to defend against claims affirmatively asserted, including the opportunity to be represented by an attorney, present a defense, participate in discovery, cross-examine witnesses, and appear as a witness of either party . . . ." Section 27-1-703(6)(f)(ii), MCA (2007).

¶18 Prior to the statute's amendment in 1997, we held that § 21-1-703, MCA (1995), violated the substantive due process rights of plaintiffs and unnamed parties because the statute allowed apportionment of liability "to parties who are not named in the lawsuit and *who do not have an opportunity to appear and defend themselves . . . ." Plumb v. Fourth Jud. Dist. Ct.*, 279 Mont. 363, 379, 927 P.2d 1011, 1021 (1996) (emphasis added).

¶19 Before the District Court, Horn filed a motion in limine to preclude Bull River from raising a settled-party defense at trial. He argued that § 27-1-703, MCA (2007), was unconstitutional on the same grounds that this Court invalidated earlier provisions of the statute in *Plumb*. The District Court denied Horn's motion because it determined that "Bull River ha[d] complied with the statutory requirements" for a settled-party defense under the new law by amending its answer to plead a non-party defense against settled and released entities Moore Oil and Watts Trucking. The third-party complaint against Jerry Amoruso also was settled prior to trial, but Amoruso appeared and defended the claim at trial, as authorized by § 27-1-703(6)(f)(ii), MCA.

¶20     On the final day of trial and just prior to the parties' closing arguments, Horn's counsel joined with Amoruso's counsel in a M. R. Civ. P. 50 motion for judgment as a matter of law as to Moore Oil and Watts Trucking. Horn and Amoruso argued that Bull River had not produced any evidence demonstrating that either of the settled non-parties was negligent in handling the fuel delivered to Bull River. The District Court denied their motion and allowed the jury to weigh whatever evidence may have been presented.

¶21     The District Court then turned its attention to the special verdict form. Counsel for Bull River stated that he had "no problem with this verdict form." Horn's counsel, who had prepared the special verdict form, offered no additional comments or changes to the form. The special verdict form called upon the jury first to determine whether Bull River was negligent. If the jury answered "yes" to that question, the jury was to proceed to the remaining questions on the special verdict form, which in part asked the jury to determine whether either Moore Oil or Watts Trucking was negligent. If the jury answered "no" to the first question, the jury was instructed to sign and date the special verdict form and call the bailiff. Because the jury answered "no" to the question whether Bull River was negligent, it returned the special verdict form without considering the negligence of Moore Oil or Watts Trucking.

¶22     On appeal, Horn argues that § 27-1-703, MCA (2007), is unconstitutional as a violation of his right to due process of law. Bull River responds by contending that Horn lacks standing to challenge the constitutionality of the statute because Horn "did not sustain any loss associated with the settled-party defense."

¶23　The defect we have found in pre-1997 versions of § 27-1-703, MCA, primarily concerned the jury's apportionment of fault as between parties and nonparties to the litigation. Based on the likelihood that juries may assign a disproportionate share of liability to unrepresented parties, we held in *Cusenbary v. Mortensen* that "[t]here is no mechanism provided in § 27-1-703, MCA (1995), by which the negligence of nonparties, including third party defendants released from liability, can be fairly apportioned by a jury." 1999 MT 221, ¶ 60, 296 Mont. 25, 987 P.2d 351.

¶24　Whether application in this case of § 27-1-703, MCA, constituted a similar denial of due process is not properly before us on this record and in light of the verdict actually rendered. Having found no negligence by Bull River, there was no fault to be apportioned. When the jury found that Bull River was not negligent, its task was finished as instructed by the special verdict form prepared and proposed by Horn.

¶25　Although Horn argues that Bull River's introduction of the conduct of the settled parties allowed it to diminish its own responsibility without sufficient evidence that the settled parties had contributed to the injury, we fail to discern how the admission of this evidence materially affected Horn's substantial rights as required to prevail on a motion for a new trial. Section 25-11-102, MCA. The verdict form gives no indication whether the jury might have considered the settled parties to be negligent. Without a finding of negligence against Bull River, the jury was not asked to determine the negligence of the settled parties. It is impossible to know whether the jury would have found Moore Oil or Watts Trucking negligent, or whether it would have apportioned 100% of fault to those

settling non-parties, had it found fault by anyone. "[W]e certainly will not speculate" when the verdict form does not explain the jury's thought processes. *Seltzer v. Morton*, 2007 MT 62, ¶ 97, 336 Mont. 225, 154 P.3d 561; *Ammondson v. Northwestern Corp*., 2009 MT 331, ¶ 82, 353 Mont. 28, 220 P.3d 1. As noted, Horn's counsel prepared the special verdict form. It is well established that "acquiescence in error takes away the right of objecting to it." *In re A.A.*, 2005 MT 119, ¶ 26, 327 Mont. 127, 112 P.3d 993 (quoting § 1-3-207, MCA). We will not place the District Court in error "for an action to which the appealing party acquiesced or actively participated." *In re A.A.*, ¶ 26.

¶26 When presented with constitutional challenges, we have been guided by the principle that "[a] court should not decide the constitutionality of a statute if the case can be decided without reaching the constitutional question." *Kulstad v. Maniaci*, 2010 MT 248, ¶ 49, 358 Mont. 230, 244 P.3d 722 (citing *Baxter v. State*, 2009 MT 449, ¶ 10, 354 Mont. 234, 224 P.3d 1211). We hold that, in light of the special verdict form and the jury's finding that the named party defendant was not negligent, Horn cannot demonstrate prejudice from Bull River's reliance on the settled-party defense authorized by § 27-1-703, MCA. As such, we need not address the constitutionality of the statute.

¶27 2. *Did the District Court abuse its discretion when it allowed Bull River to question Pete Horn about his unrelated insurance claims?*

¶28 During the fourth day of trial, Horn's counsel cross-examined Michael Rodrigue, an independent insurance adjuster for Farmers who assisted Ruth Mikulic with the claims

against Bull River, regarding his testimony that Horn did not follow through with his responsibility to submit documentation supporting his claim:

Q. You knew the rules of the road when it came to handling insurance claims; correct?

A. Correct.

Q. Pete Horn had never received the same instructions as a claims adjustor as you; correct?

A. I don't know that.

Q. Okay. Pete hadn't been to any sort of certification or training in handling insurance claims to the best of your knowledge.

A. I don't know that either.

Q. All right. So fair to say you didn't know what sort of experience Pete had in terms of submitting claims to insurance companies. Fair?

A. Fair.

Q. Okay. And during the course of your involvement in this claim you were aware that Pete had likely never handled an insurance claim like this one; correct?

A. Correct.

Q. In fact, most people hadn't. Fair?

A. That's fair, yeah.

Q. Mr. Horn did not have experience in handling insurance claims like this one to the best of your knowledge; correct?

A. Correct.

11

¶29 Based on this line of questioning, Bull River's counsel requested a bench conference prior to his redirect examination. Counsel for Bull River informed the District Court outside the presence of the jury:

> I instructed [Michael Rodrigue] to not say a word about those insurance claims even though he was directly asked that. So I would ask for leave of the Court to ask Mr. Rodrigue what he knows about the prior insurance claims that Mr. Horn has made.

Horn's counsel responded:

> No. During his deposition I asked him the same questions and you heard his testimony. He denied any knowledge of Mr. Horn's insurance claims. I don't have any knowledge of Pete Horn's insurance claims. I don't know where we're going with this. So how am I to learn --

The trial court asked counsel about the source of information regarding Horn's prior insurance claims. Bull River's counsel responded that he did not know because he had informed Rodrigue that a ruling in limine precluded any such testimony. The court then ruled:

> Well, we're not going to be able to get it out of this witness. *If you're going to get it out of anybody you're going to have ask Mr. Horn* question [sic]. You can cross-examine him . . . [to ask] if he has done this before, what his background is, that the Court finds that it would be proper that the plaintiff could address that issue. I don't find that that's appropriate for this witness [Rodrigue], especially given the fact that that was apparently unknown to both counsel before we walked through the door here.

(Emphasis added.) Horn's counsel responded to the court's decision by saying, "[t]hank you, Your Honor."

¶30 Bull River recalled Pete Horn during its case-in-chief and proceeded to question him about a litany of insurance claims he had filed since 1997. Horn's counsel did not object.

¶31 Horn asserts that the District Court abused its discretion when it allowed Bull River to question him about these unrelated insurance claims without any showing that the claims were relevant to the issue before the jury. Horn contends that he properly objected to Bull River's line of questioning. In the alternative, Horn proposes that, even if he did not properly object, his earlier motion in limine to exclude "any questions regarding or reference to Horn's past claims or litigation" preserved his objection for appeal. Bull River responds that Horn opened the door and failed timely to object to questions regarding his past insurance claims. Bull River further reasons that Horn's motion in limine was not specific enough to preserve an objection because it did not mention insurance claims.

¶32 We review a district court's evidentiary rulings to determine not whether this Court would have made the same ruling, but whether the district court "'acted arbitrarily without conscientious judgment or exceeded the bounds of reason' and prejudiced a substantial right of the appellant." *Weber v. BNSF Ry. Co.*, 2011 MT 223, ¶ 39, 362 Mont. 53, 261 P.3d 984 (quoting *Seltzer*, ¶ 65).

¶33 The law is clear that a motion in limine "*may* relieve a party of the obligation to contemporaneously object at trial *provid[ed] that the motion is specific and articulates the grounds for the objection*." *State v. Stock*, 2011 MT 131, ¶ 45, 361 Mont. 1, 256 P.3d

899 (quoting *State v. Ankeny*, 2010 MT 224, ¶ 39, 358 Mont. 32, 243 P.3d 391) (emphasis in original). Horn's unopposed motion requested that "no evidence, testimony, or reference should be allowed regarding past claims or litigation involving plaintiffs." The record indicates that both Horn and Bull River understood that the motion in limine encompassed Horn's past insurance claims. Bull River's counsel told the District Court that he had specifically instructed Rodrigue "to not say a word about those insurance claims" because of the "motion in limine," but urged the court to allow the testimony because Horn's questioning had opened the door.

¶34 Assuming Horn's motion preserved the objection, we have held that a party who obtains an order in limine may waive his right to rely on that order by acquiescing at trial to the introduction of the evidence in question. *Ankeny*, ¶ 48. When the District Court ruled that Rodrigue could not be questioned regarding Horn's prior insurance claims but Horn could be, Horn not only registered no objection, he thanked the court for its ruling. Horn's counsel made no objection when the questions later were put to Horn directly. We hold that, by affirmatively acquiescing to the District Court's ruling, Horn waived his right to argue on appeal that his motion in limine prohibited the introduction of his past insurance claims. Horn is not entitled to a new trial on this ground.

¶35 3. *Did the District Court abuse its discretion when it denied Horn's motion for a new trial based on Bull River's insurance-related arguments?*

¶36 Horn argues that, throughout the jury trial, Bull River "attempted to confuse the lines between this case and an insurance bad faith case against Farmers Insurance" in a

14

way that was "prejudicial to Mr. Horn."  Although "[e]vidence of a party's insured status is generally inadmissible in Montana," *Gurnsey v. Conklin*, 230 Mont. 42, 48, 751 P.2d 151, 154 (1988), the parties agreed to allow such evidence in this case.  Horn's theory of the case was that Bull River was responsible for the conduct of its agent, Farmers, in failing to resolve Horn's claim on "an admitted liability" case.

¶37     Horn made it clear to Farmers at the outset of the claims process that he could not afford to repair his equipment until Farmers paid his claim.  In the Final Pretrial Order, Horn's contentions of fact included the claim that "Farmers' Insurance Exchange, on behalf of Bull River, has acted unreasonably in the handling of Horn's claim and has unreasonably denied the claim and delayed resolution of the claim."  Horn's contentions also referenced his complaint against Farmers with the Montana Insurance Commissioner.  He questioned Bull River's witnesses at trial about the Commissioner's actions in response to his complaint.  Horn also called as a rebuttal witness Theresa Oakley, a compliance specialist with the Insurance Commissioner, who testified that Farmers' response to Horn's claim was "beyond unbelievable" and that she would have been "embarrassed" to have been the adjuster who had handled his claim.  Horn argued to the jury that because Farmers was "Bull River's agent for the purpose of handling claims against Bull River and conducting litigation on Bull River's behalf," Bull River ultimately was responsible for the loss of use damages caused by Farmers' dilatory handling of Horn's claim.

15

¶38   Bull River responded to that argument at trial by arguing to the jury that Farmers' actions in handling the claim did not prove that water contamination occurred due to Bull River's negligence.  The only statement made by counsel for Bull River to which Horn specifically objected is the following from Bull River's opening statement:

> As Mr. Duerk pointed at the beginning [sic], this is in essence a negligence case.  As you hear the evidence, what we heard through this whole demonstration on the screen, folks, it wasn't a negligence case against Bull River Store.  It was essentially an insurance bad faith case against Farmers Insurance. And Farmers Insurance is not a party.  I know I keep saying that and you're going to hear a lot of that, but that's a fact.  In fact, and this is something you should know, too, what he's talking about, all his complaints that he was throwing up there on the screen --

At that point, Horn's counsel interrupted and said: "Your Honor, we are at a point where this is just argument.  He's categorizing my case.  That's not evidence."  The District Court did not overrule the objection, but instructed counsel for Bull River to "try staying with an opening statement that goes to the facts you intend to show."

¶39   Counsel for Bull River told the jury in his opening statement that "Mr. Horn's beef is very clearly against the insurance company here.  No dispute about that.  And he's got the right to bring that in a subsequent case if he so chooses."  Horn did not object to that statement by Bull River or otherwise interrupt that portion of opposing counsel's opening statement.

¶40   Horn argues on appeal that Bull River misled the jury "in an attempt to make it believe that Mr. Horn could recover all of his claimed damages against Farmers Insurance."  Horn asserts that "Bull River continued throughout trial to argue, in essence,

16

that Mr. Horn should recover damages from Farmers' Insurance [sic]." He fails, however, to point to any specific objections he made to statements that he now labels as prejudicial or misleading. Horn made no objections during Bull River's closing argument that the defendant had nothing to do with controlling Farmers' handling of Horn's claim and that "Farmers Insurance is not a party to this case." Horn fails to demonstrate how the District Court abused its discretion in allowing such statements in the absence of any objections and in light of Horn's own contentions.

¶41 Failure to make a timely objection "constitutes waiver of the right to claim error on appeal." *In re Bower*, 2010 MT 19, ¶ 20, 355 Mont. 108, 225 P.3d 784. In light of the trial record, we hold that the District Court did not abuse its discretion when it denied Horn's motion for a new trial based on Bull River's insurance-related arguments.

¶42 4. *Is Horn entitled to a new trial on the ground of juror misconduct?*

¶43 In support of his motion for a new trial, Horn submitted affidavits from two jurors—Eugene Ronning and Johnny Goodman—as support for his argument that "[he] was prevented from a fair trial when Juror, Anna Wood brought external information into the jury room." Ronning and Goodman were the two jurors who disagreed with the jury's finding that Bull River was not negligent. According to Ronning, "Anna Wood discussed her position as manager of a gas station in Thompson Falls" during jury deliberations and "discussed the precautions taken at her gas station which prevent water from getting into the diesel fuel." Goodman provided a similar statement and further said

17

that Wood's statements "were made so that the jury would not find Bull River Country Store Properties negligent" and were "a major factor in the jury's determination . . . ."

¶44   Horn contends that Wood's conduct is grounds for a new trial under § 25-11-102(1), MCA, because it constituted an "irregularity in the proceedings which prevents a party from having a fair trial." Horn also complains that because Wood did not disclose her employment at the gas station on her jury questionnaire, Horn "could not have expected that she would eventually provide expert testimony on gas station procedures to the other jurors during deliberations."

¶45   Bull River responds to those arguments by asserting that Horn's argument grossly mischaracterizes the information contained in the Ronning and Goodman affidavits. Wood did not conduct independent research or bring external information into the jury room, Bull River contends, but instead merely made permissible statements based on her personal knowledge. Because the information Wood discussed amounted to an internal influence and not an external influence, Bull River submits that the use of the Ronning and Goodman affidavits is improper.

¶46   As a general rule:

> [A] juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.

M. R. Evid. 606(b). Pertinent here, a juror is permitted to submit an affidavit calling into question the validity of a verdict if the affidavit concerns "extraneous prejudicial

18

information" improperly brought to the jury's attention or "outside influence" brought to bear upon any juror. M. R. Evid. 606(b).

¶47 We have "consistently held that under Rule 606(b), M. R. Evid., the use of juror affidavits to impeach a jury verdict is limited to showing external influences on the jury." *Est. of Spicher v. Miller*, 260 Mont. 504, 507, 861 P.2d 183, 185 (1993). In other words, "juror affidavits may not be used to impeach the verdict based upon internal influences on the jury," in part because "jurors are expected to bring to the courtroom their own knowledge and experience to aid in their resolution of the case." *Stebner v. Associated Materials, Inc.*, 2010 MT 138, ¶ 16, 356 Mont. 520, 234 P.3d 94 (citing *Harry v. Elderkin*, 196 Mont. 1, 8, 637 P.2d 809, 813 (1981) and quoting *State v. Kelman*, 276 Mont. 253, 262, 915 P.2d 854, 860 (1996), respectively).

¶48 Horn maintains that Wood's comments during jury deliberations were an external influence because they present a similar factual situation to the one we analyzed in *Brockie v. Omo*, 255 Mont. 495, 844 P.2d 61 (1992). In that case, the plaintiff's decedent was killed after the car in which he was riding skidded off the highway and struck a flasher board stationed on the highway median. *Brockie*, 255 Mont. at 497, 844 P.2d at 62. The parties disputed whether or not the flasher board complied with a highway safety standard that "prohibit[ed] storage of a traffic control device within 30 feet" of the highway. *Brockie*, 255 Mont. at 497, 844 P.2d at 63. A highway patrol officer testified that the flasher board was parked "27 feet 2 inches" from the highway and the defendant's witness—an accident reconstruction expert—testified that the flasher board

19

was "between 34 and 48 feet" from the highway. *Brockie*, 255 Mont. at 497, 844 P.2d at 63. A juror later acknowledged that he had engaged in independent research at Carroll College's library to clarify the expert's testimony, which "was at the very heart of the evidence." *Brockie*, 255 Mont. at 500, 844 P.2d at 64. We held that the juror's actions amounted to jury misconduct. *Brockie*, 255 Mont. at 499, 844 P.2d at 64.

¶49 The facts presented in this case are not similar to those in *Brockie*. Whereas the juror in *Brockie* acknowledged engaging in independent research, Horn admits that "it is unclear whether or not Ms. Wood had existing knowledge of Conoco's procedures or whether she researched or reviewed the procedures during trial."

¶50 The facts before us are more similar to those raised in *State v. Hage*, 258 Mont. 498, 853 P.2d 1251 (1993). In that case, the defendant argued that he should be given a new trial because "[a] juror informed the other jurors that he had personal knowledge that a telephone log was kept of all telephone calls made from the jail." *Hage*, 258 Mont. at 507, 853 P.2d at 1256. We held that the juror's personal knowledge did not fall within any of the exceptions in Rule 606(b) because personal "knowledge and information shared from one juror to another or others is not an extraneous influence." *Hage*, 258 Mont. at 508-09, 853 P.2d at 1257.

¶51 There is no evidence that Wood ignored the District Court's repeated admonitions to the jury to refrain from independent investigation and brought extraneous information into the jury room. When a motion for a new trial is based on alleged jury misconduct, we "will not disturb a district court's decision absent a manifest abuse of discretion,"

20

which is "one that is obvious, evident, or unmistakable." *Stebner*, ¶ 11. Wood's statements were internal influences within the jury deliberations and her statement reflects precisely the type of personal knowledge and experience that is inadmissible under M. R. Evid. 606(b). *State v. Cooksey*, 2012 MT 226, ¶¶ 17-19, ___ Mont. ___, ___ P.3d ___.

¶52 Horn's complaint that he was "not aware of Ms. Wood's experience in the gas station industry prior to interviewing jurors after trial" because Wood did not divulge that information on her jury questionnaire is unpersuasive. Horn does not advance any legal theory as to how omitting complete employment information from a jury questionnaire amounts to juror misconduct. In any event, Horn should have been alerted to Wood's relationship with the gas station industry from Wood's statements on the record during the trial. During *voir dire*, Wood answered, "I get fuel from Moore Oil" after Horn's counsel asked whether any of the jurors had ever worked for any of the companies involved in the litigation. Horn's counsel asked if she had ever had a problem with the fuel and if she had any concerns about whether "this is the right case" for her to serve. Receiving negative responses, Horn's counsel moved on. Wood also asked the District Court during a trial recess, with counsel for both parties present, whether it was permissible for her to call Moore Oil during the trial to discuss a recent fuel purchase. Horn's counsel said that he had no objection to Wood doing so.

¶53 Although the record does not reflect that Wood ever stated specifically that she managed a gas station, she did indicate that she was in the business of purchasing fuel

21

from Moore Oil, an oil and fuel supplier. It follows that Horn was put on notice as to Wood's possible relationship with the fuel industry.

¶54 We hold that, on the record before us, the District Court did not manifestly abuse its discretion when it denied Horn's motion for a new trial based on the alleged juror misconduct. Anna Wood's statement during jury deliberations regarding the policies in place at the gas station she managed was an internal influence that is not admissible to impeach the verdict.

## CONCLUSION

¶55 For this Court to reverse the denial of a motion for new trial, the trial court's "abuse of discretion must be so significant as to materially affect the substantial rights of the party asserting error." *Clark v. Bell*, 2009 MT 390, ¶ 18, 353 Mont. 331, 220 P.3d 650. Horn has not demonstrated that, applying that standard, the District Court's denial of his motion for a new trial amounted to an abuse of discretion. *Stebner*, ¶ 11. After a complete review of the record, we conclude that Horn has not shown prejudice to his substantial rights by virtue of any of the claimed errors properly preserved for appeal.

¶56 The judgment of the District Court is affirmed.


/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS

22

/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE