DA 12-0506

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 247

L. FRED WEAVER, JOAN WEAVER,
and VICKI WEAVER,

          Plaintiffs, Appellees, and Cross-Appellants,

    v.

STATE OF MONTANA and MONTANA
DEPARTMENT OF NATURAL RESOURCES
AND CONSERVATION,

          Defendants, Appellants, and Cross-Appellees.

APPEAL FROM:    District Court of the Third Judicial District,
In and For the County of Granite, Cause No. DV 02-25
Honorable Ray J. Dayton, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Robert E. Sheridan, Jeffrey M. Roth; Garlington, Lohn & Robinson,
PLLP; Missoula, Montana

      For Appellees:

          Quentin M. Rhoades, Liesel Shoquist, Robert Erickson; Sullivan,
Tabaracci & Rhoades, P.C.; Missoula, Montana

Submitted on Briefs:  June 12, 2013

Decided:  September 3, 2013

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     The State of Montana appeals a Granite County jury's verdict awarding damages to L. Fred Weaver, Joan Weaver and Vicki Weaver (the Weavers) from the State's negligent fire containment procedures on their real property. The Weavers cross-appeal the Third Judicial District Court's denial of their post-trial motion for sanctions. The State raises the following issues on appeal:

¶2     *1. Whether the District Court erred when it denied the State's motion to dismiss the Weavers' negligence claim.*

¶3     *2. Whether the District Court erred when it granted the Weavers' motion to strike and prohibited the State from asserting a public duty doctrine defense.*

¶4     *3. Whether the District Court incorrectly allowed the jury to find the State negligent in the absence of expert testimony establishing the standard of care.*

¶5     *4. Whether the District Court abused its discretion by denying the State's motion to change venue.*

¶6     The Weavers raise one issue in their cross-appeal:

¶7     *Whether the District Court abused its discretion by denying the Weavers' motion for discovery sanctions against the State.*

¶8     We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶9     On August 7, 2000, a wildland fire started in the Ryan Creek drainage north of Interstate 90 in Granite County, near the Weavers' real property. Among other procedures employed to contain what became known as the Ryan Gulch Fire, the State initiated a "back burn" fire, a technique used to decrease the amount of flammable

material in the fire's path. On August 13, 2000, fire spread onto the Weavers' property, causing substantial damage.

¶10    On December 17, 2002, the Weavers filed a complaint alleging that the State failed to "exercise ordinary care in the control, suppression and containment of the Ryan Gulch Fire." The Weavers alleged that their property was not damaged by the original Ryan Gulch Fire, but instead by the back burn fire, which the State had failed to control. The Weavers alleged that the State negligently started the back burn fire, in "high wind conditions without adequate means of control and/or suppression." Additionally, the Weavers alleged that the back burn fire was unnecessary because the original wildland fire already had been contained through the efforts of local ranchers and farmers. The Weavers sustained damage to "timber, grazing land, natural resources and other property." On February 13, 2003, the State filed an answer denying liability for negligence and inverse condemnation and pleading several defenses. The parties engaged in discovery for some period of time and the case then lay dormant for approximately six years before the Weavers obtained new counsel in 2010. In November 2010, the District Court issued a scheduling order directing the parties to submit all motions by December 16, 2011, and to present the pretrial order and file all trial briefs by March 16, 2012. The court set the trial date for April 9, 2012.

¶11    The Weavers amended their complaint on April 21, 2011, to add a claim of inverse condemnation, alleging that the State damaged their property for public use. The State

3

answered the amended complaint, again asserting several defenses. Neither answer raised the public duty doctrine as a defense.

¶12 In accordance with the scheduling order, the parties submitted their proposed pretrial order and respective trial briefs on March 16, 2012. The Weavers' trial brief was directed exclusively to their inverse condemnation claim. The pretrial order included the State's contention that it was not liable to the Weavers under the public duty doctrine because, when a "governmental entity owes a duty to the general public, that duty is not owed to any specific individual." The State presented legal argument on this contention in its trial brief.

¶13 Both parties filed motions in response to the other's trial brief. The Weavers moved to strike the public duty doctrine defense because the State raised it for the first time in the proposed pre-trial order; they argued that the public duty doctrine is an affirmative defense under M. R. Civ. P. 8(c) that is waived if not pleaded. The District Court agreed that the State was required to plead the public duty doctrine as an affirmative defense and granted the motion to strike. The court held that, even if it was not an affirmative defense, the State's "failure to plead or otherwise raise the defense has prejudiced Plaintiffs."

¶14 In response to the Weavers' trial brief, the State moved to dismiss based on an alleged judicial admission in the brief that the State's fire management procedures were "reasonable and necessary," rather than negligent. The next day, the Weavers filed a Notice of Errata to correct the language the State had cited in support of its motion.

4

Following argument from both parties, the District Court denied the State's motion in open court at the conclusion of a pretrial hearing.

¶15 The State moved for a change of venue on March 29, 2012, due to publication of three articles in the March 8, 2012 edition of the local newspaper, which the State argued contained biased and inflammatory comments that contaminated the potential jury pool. The District Court denied that motion in open court as well. The court considered whether the State had shown either presumed or actual prejudice, pursuant to *State v. Kingman*, 2011 MT 269, 362 Mont. 330, 264 P.3d 1104. The court determined that the State failed to show presumed prejudice and that the existence of actual prejudice could not be evaluated until the parties had conducted *voir dire*.

¶16 After eight days of trial, the jury reached a verdict against the Weavers on their claim of inverse condemnation, but decided that the State negligently caused damage to the Weavers' property. By a vote of nine to three, the jury awarded damages to the Weavers in the amount of $730,000. Following the trial, the Weavers filed a "Motion for Entry of Judgment on Jury Verdict," requesting sanctions on the ground that the State had committed "prejudicial discovery abuse" by providing inaccurate dates in the captions of photographs of the wildfire, some of which were produced during discovery. A witness for the State had corrected the photograph dates at trial. The District Court denied the motion, "given the verdict in favor of the Plaintiffs" and "lack of prejudice and bad faith." The State appeals the jury's verdict and the Weavers cross-appeal the District

5

Court's denial of sanctions. Additional facts from the record and applicable standards of review will be discussed with respect to each issue.

## DISCUSSION

¶17 *1. Whether the District Court erred when it denied the State's motion to dismiss the Weavers' negligence claim.*

¶18 As noted, the State sought dismissal of the negligence claim based on the statement in the Weavers' trial brief that the State's firefighting measures were "reasonable and necessary"—a statement the State argues constituted a judicial admission.

### Standard of Review

¶19 Where error has been predicated on the determination of a judicial admission, our cases have applied the typical standard of review for findings of fact and conclusions of law. That is, we review a district court's factual findings to determine whether they are clearly erroneous and its conclusions of law for correctness. *See e.g. Hart v. Hart*, 2011 MT 102, ¶ 10, 360 Mont. 308, 258 P.3d 389; *Conagra, Inc. v. Nierenberg*, 2000 MT 213, ¶¶ 22-23, 301 Mont. 55, 7 P.3d 369. Whether a statement is one of fact or law, for the purpose of determining if the statement should be considered a judicial admission, is a question of law. *See Stevens v. Novartis Pharms. Corp.*, 2010 MT 282, ¶ 75, 358 Mont. 474, 247 P.3d 244 ("The District Court correctly ruled that Stevens' statements made in prior pleadings were not judicial admissions because they were not statements of fact."). Ultimately, a district court's determination whether a statement constitutes a judicial admission "depends upon the circumstances of each case." *Kohne v. Yost*, 250 Mont.

6

109, 113, 818 P.2d 360, 362 (1991). As such, we will review that determination for an abuse of discretion. *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir. 1988) ("[S]tatements of fact contained in a brief *may* be considered admissions of the party in the discretion of the district court."); *see also Gospel Missions of Am. v. City of L.A.*, 328 F.3d 548, 557 (9th Cir. 2003) ("We have discretion to consider a statement made in briefs to be a judicial admission, . . . binding on both this court and the trial court." (citations omitted)).

**Analysis**

¶20 A judicial admission is a statement or "express waiver" made in a court proceeding by a party or its counsel "conceding the truth of an alleged fact." *Bitterroot Int'l Sys. v. Western Star Trucks, Inc.*, 2007 MT 48, ¶ 41, 336 Mont. 145, 153 P.3d 627. Judicial admissions may be made at "'any point during the litigation process,' including 'during discovery, pleadings, opening statements, direct and cross-examination, as well as closing arguments.'" *Novartis*, ¶ 74 (quoting *In re Est. of Hill*, 281 Mont. 142, 149-50, 931 P.2d 1320, 1325 (1997)). "A judicial admission has a conclusive effect upon the party who makes it, and prevents that party from introducing further evidence to prove, disprove, or contradict the admitted fact." *Hart*, ¶ 14 (quoting *Bitterroot Int'l Sys.*, ¶ 41). A judicial admission is not binding unless it is "an unequivocal statement of fact and not the expression of an opinion or a legal conclusion." *Papich v. Quality Life Concepts, Inc.*, 2004 MT 116, ¶ 31, 321 Mont. 156, 91 P.3d 553 (citation omitted).

7

¶21 The Weavers' trial brief did not address their claim of negligence, but focused exclusively on their inverse condemnation claim:

> This was not an irrational decision given the cost to society in shutting down the power supply for hundreds of thousands of people in Missoula and the Inland Northwest, in destroying telephone and 911 equipment, in closing [Interstate 90], in burning up the radio gear at Union Peak or losing the historic site of Garnet. It was surely a reasonable and necessary decision to direct the fire to the east, or to at least let it move across the Weaver property to flatter, defensible space. But the destruction of the Weaver Ranch to serve the great[er] good was, ultimately, a taking.

¶22 The day after the State moved to deem the above statement a judicial admission, the Weavers filed a notice of errata due to an alleged "scriveners' error," amending their trial brief to read:

> Whether or not it was a reasonable and necessary decision to direct the fire to the east, or to at least let it move across the Weaver property to flatter, defensible space, the destruction of the Weaver Ranch to serve the greater good was, ultimately, a taking.

The State asserted that even the amended trial brief reflected a theme that the State's fire-fighting measures were reasonable and appropriate given the circumstances. The District Court denied the State's motion based on its observation that the statement concerned the Weavers' alternative inverse condemnation claim and its determination that the disputed portion of the Weavers' trial brief constituted a conclusion of law, not an admission of fact.

¶23 The State argues that the above-quoted language characterizes what the firefighting team did while suppressing the fire and thus constitutes an admission of fact. According to the State, "the Weavers conceded the State acted reasonably." The

8

Weavers assert that they "admitted no facts" in their trial brief and point out that the issues of law stipulated in the pretrial order included whether the State's actions in fighting the fire were reasonable. In the event that the statement in their pretrial brief amounted to a judicial admission, the Weavers argue that they promptly withdrew it upon discovery of their "scrivener's error."

¶24 We agree with the District Court that the relevant language in the Weavers' pretrial brief was not an "unequivocal statement of fact." *Papich*, ¶ 31. As the District Court noted, the trial brief addressed the Weavers' inverse condemnation claim, not their alternative claim of negligence. *See Novartis*, ¶ 70 (pleadings "permit hypothetical and inconsistent claims"). Further, whether the State "acted reasonably" in directing the fire to the east was not a fact, but a legal conclusion to be based on the facts found by the jury. *Novartis*, ¶¶ 73-75 (statement in pleading that doctor was negligent for failure to communicate risk was a conclusion of law and therefore not a judicial admission).

¶25 *Kohne v. Yost*, on which the State relies, is not controlling. There, we held that a jury verdict finding the defendant not negligent could not stand where defense counsel conceded negligence during closing arguments and admitted that his client had fired a B.B. gun at the plaintiff. *Kohne*, 250 Mont. at 110-111, 818 P.2d at 360-361. We held that the "[d]efense counsel's unequivocal statements, taken in full context with the rest of his closing argument, constituted judicial admissions on the issue of negligence binding his client." *Kohne*, 250 Mont. at 113, 818 P.2d at 362. The *Kohne* court did not analyze separately which of counsel's statements were admissions of fact as opposed to

9

conclusions of law, but examined the statements as a whole in light of the circumstances of the case. *Kohne*, 250 Mont. at 113, 818 P.2d at 362. Here, in contrast to *Kohne*, the context surrounding the Weavers' statement indicates it was not an admission of fact on their alternative theory of negligence.

¶26 In further contrast to *Kohne*, the Weavers immediately modified the disputed language to clarify their intended meaning. *See Conagra, Inc.*, ¶ 45 (a judicial admission is "not effective if it was subsequently modified or explained so as to show that the litigant was mistaken" (quoting *Griffin v. Superior Ins. Co.*, 338 S.W.2d 415, 418 (Tex. 1960)) (internal quotation marks omitted)). Based on its review of the circumstances of this case, the District Court did not abuse its discretion in determining that the statement did not constitute a judicial admission.

¶27 *2. Whether the District Court erred when it granted the Weavers' motion to strike and prohibited the State from asserting a public duty doctrine defense?*

**The District Court's Ruling**

¶28 The Weavers' amended complaint alleged that the State "owed a duty to [the Weavers] to act in a reasonable manner and to exercise ordinary care in the control, suppression and containment of the Ryan Gulch Fire." The State answered that allegation as follows: "Answering paragraph 13, admits that the State owed to the Plaintiffs any duties prescribed by law, but deny the remaining assertions of said paragraph." The State did not mention the public duty doctrine in its answer or file any pretrial motions on the issue.

10

¶29 On March 16, 2012—three weeks before the trial began—the State filed its trial brief. For the first time since the Weavers filed their complaint in 2002, the State asserted in that brief that the Weavers' negligence claim was fatally flawed because they could not establish that the State owed them a duty of reasonable care pursuant to the public duty doctrine. The State summarized its position in the Pretrial Order:

> The existence of a legal duty is a question of law to be determined by the Court. If there is no duty, there can be no breach of duty and a requisite element of a negligence claim is missing. Montana has adopted the public duty doctrine[,] which provides that where a governmental entity owes a duty to the general public, that duty is not owed to any specific individual. Montana Code Annotated § 76-13-115, which sets forth the State fire policy[,] provides in part, "(5) all private property in Montana has wildfire protection from a recognized fire protection entity." Thus, with regard to [the State's] efforts to suppress the Ryan Gulch fire, there was no duty to specific individuals such as the [Weavers,] but only to the general public.

¶30 In the Weavers' motion to strike this argument from the Pretrial Order, they argued that the "State should not be allowed to include . . . matters in the Pretrial Order that it did not include in its pleadings" as either contentions or affirmative defenses because allowing such a tactic deprived the Weavers of "fair notice, possibl[e] discovery, and the opportunity for motion practice . . . ."

¶31 After determining that the public duty doctrine was an affirmative defense that should have been raised in the State's answer, the court ruled as follows:

> Even if the public duty doctrine does not constitute an "avoidance" or affirmative defense under M. R. Civ. P. 8(c), Defendants' failure to plead or otherwise raise the defense has prejudiced Plaintiffs. Defendants' pleadings do not provide Plaintiffs with notice that the public duty doctrine would be asserted as a defense. The [State's] Amended Answer does not assert any specific defenses with respect to a duty. The Court's review of the file indicates that the public duty doctrine was not raised by Defendants

11

at any time prior to its inclusion in the [Pretrial Order]. Defendants' failure to raise the public duty doctrine earlier in this case has prejudiced the ability of Plaintiffs to conduct discovery and gather facts that might defeat the defense. Under these circumstances, it would be prejudicial and unfair to permit Defendants to assert the public duty doctrine on the eve of trial.

**Standard of Review**

¶32 Because the District Court granted the motion to strike based on its determination that the Weavers would be prejudiced by the State's failure to raise the issue until three weeks before trial, we review its determination for abuse of discretion as a matter of trial administration. *Fink v. Williams*, 2012 MT 304, ¶ 18, 367 Mont. 431, 291 P.3d 1140; *Blanton v. Dep't of Pub. HHS*, 2011 MT 110, ¶ 22, 360 Mont. 396, 255 P.3d 1229.

**Analysis**

¶33 The State asserts that the District Court erroneously held that it was required to plead the public duty doctrine as an affirmative defense. Since the public duty doctrine "asks whether liability exists in the first place—whether a duty is owed under the facts—not whether the defendant can avoid liability despite the existence of a duty," the State argues that it does not qualify as an affirmative defense. The State does not address the District Court's alternative rationale for striking the defense—that the State prejudiced the Weavers by asserting it at such a late date.

¶34 M. R. Civ. P. 8(c)(1) provides that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense . . . ." We have explained the distinction between a denial under M. R. Civ. P. 8(b) and an affirmative defense under Rule 8(c): "Rule 8(b), M.R.Civ.P., 'is concerned with negative defenses—those that

12

controvert the adversary's claim. Rule 8(c), on the other hand, is concerned with affirmative defenses—the pleading of matter that is not within the claimant's prima facie case.'" *Burns v. Cash Constr. Lien Bond*, 2000 MT 233, ¶ 32, 301 Mont. 304, 8 P.3d 795 (quoting *Sterrett v. Milk River Prod. Credit Ass'n*, 234 Mont. 459, 463-64, 764 P.2d 467, 469 (1988)).

¶35 The parties point out that this Court has not addressed whether the public duty doctrine is an affirmative defense that must affirmatively be pleaded under M. R. Civ. P. 8(c). Given the manner in which this case was pleaded and in which it proceeded, and in light of the District Court's ultimate basis for its ruling, we determine that this is not the appropriate case in which to decide that question. We have observed that Rule 8(c) concerns the underlying principles of "fairness and notice." *Ammondson v. Northwestern Corp.*, 2009 MT 331, ¶ 55, 353 Mont. 28, 220 P.3d 1. Likewise, under Rule 8(b), a defendant's pleading must "apprise the opponent of those allegations in the complaint that stand admitted and will not be in issue at trial and those that are contested and will require proof to be established to enable the plaintiff to prevail." Wright & Miller, *Federal Practice and Procedure: Civil 3d* § 1261, 526 (West 2004). Because the State raised the public duty doctrine so close to the date of trial, the District Court concluded that the Weavers would have no opportunity to explore applicability of the doctrine to their case, such as whether any special relationship exception applied (e.*g. Nelson v. State*, 2008 MT 336, ¶ 36, 346 Mont. 206, 195 P.3d 293); likewise, there was inadequate time for the issue to be briefed and considered by the court before trial. Given that the

State's answer did not unequivocally deny the existence of a duty, and given further its failure to raise the issue of duty—an issue of law—at any time prior to filing its trial brief, the District Court was within its discretion to hold that the Weavers had not sufficiently been put on notice that the State intended to invoke the public duty doctrine and that it would unfairly prejudice them to allow the issue to be raised at that late stage in the proceedings.

¶36 "In determining whether a trial court abused its discretion, the question is not whether the reviewing court agrees with the trial court, but rather whether the trial court acted arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason, resulting in substantial injustice." *State v. Price*, 2006 MT 79, ¶ 17, 331 Mont. 502, 134 P.3d 45. We do not decide in this case whether or not the public duty doctrine is an affirmative defense or whether or not it could apply to claims arising from government efforts to suppress wildfires. We hold only that the District Court did not abuse its discretion in striking the defense under the circumstances presented here.

¶37 *3. Whether the District Court incorrectly allowed the jury to find the State negligent in the absence of expert testimony establishing the standard of care.*

**Standard of Review**

¶38 This Court generally "do[es] not address issues raised for the first time on appeal." *Robison v. Mont. Dept. of Revenue.*, 2012 MT 145, ¶ 26, 365 Mont. 336, 281 P.3d 218.

**Analysis**

¶39 The State argues that the Weavers failed to establish through expert testimony the standard of care for wildfire suppression and, as a result, also failed to establish the

14

elements of breach and causation in support of their negligence claim. On that basis, the State contends that the Weavers did not meet their burden of proof and "their negligence claim failed as a matter of law."

¶40 The Weavers argue that the State waived review of this issue by failing to raise it before the District Court. In particular, the Weavers point out that the State did not challenge the instructions provided to the jury regarding duty, breach and causation, nor did it move at any time for judgment as a matter of law. The State does not address the waiver argument in its reply brief.

¶41 The trial court instructed the jury on the standard of care as follows:

> Every person or entity is responsible for injury to the property of another, caused by its negligence.
>
> Negligence is the failure to use reasonable care. Negligence may consist of action or inaction. A person or entity is negligent if they fail to act as an ordinarily prudent person would act under the circumstances.

The State did not object to this instruction, and in fact proposed a virtually identical instruction. There was no discussion during settlement of instructions that expert testimony had not been offered sufficient to establish the standard of care.

¶42 "Under Montana law, expert testimony is required to establish the standard of care 'unless the conduct complained of is readily ascertainable by a lay[person].'" *Brookins v. Mote*, 2012 MT 283, ¶ 63, 367 Mont. 193, 292 P.3d 347 (quoting *Deaconess Hosp. v. Gratton*, 169 Mont. 185, 189, 545 P.2d 670, 672 (1976)). Where the standard of care must be established by expert testimony, it is well-established that without such expert testimony, "no genuine issue of material fact exists and the defendant is entitled to

15

judgment as a matter of law." *Estate of Willson v. Addison*, 2011 MT 179, ¶ 17, 361 Mont. 269, 258 P.3d 410 (citing cases). The State did not object to instructing the jury on the Weavers' claim of negligence on the basis that they had failed to prove an essential element of their cause of action. Although the State argues on appeal that Richard Mangan, the Weavers' expert on fire suppression efforts, failed to establish the standard of care for managing the fire, the State did not object to his testimony on that ground, nor did the State move for judgment as a matter of law for the Weavers' failure to present evidence of breach of the applicable standard of care. Both cases the State cites in support of its position that expert testimony was required are cases in which this Court upheld summary judgment. *Dayberry v. City of E. Helena*, 2003 MT 321, 318 Mont. 301, 80 P.3d 1218; *Dubiel v. Mont. Dept. of Transp.*, 2012 MT 35, 364 Mont. 175, 272 P.3d 66.

¶43 We agree with the Weavers that the State "cannot now claim that it was denied something that was never requested of, or actually denied by, the District Court." *Schwabe v. Custer's Inn Assocs.*, 2000 MT 325, ¶ 57, 303 Mont. 15, 15 P.3d 903 (overruled on other grounds, *Giambra v. Kelsey*, 2007 MT 158, ¶ 58, 338 Mont. 19, 162 P.3d 134); *see Horn v. Bull River Country Store Props.*, 2012 MT 245, ¶ 25, 366 Mont. 491, 288 P.3d 218 ("We will not place the District Court in error 'for an action to which the appealing party acquiesced . . . .'" (quoting *In re A.A.*, 2005 MT 119, ¶ 26, 327 Mont. 127, 112 P.3d 993)); § 1-3-207, MCA. The State does not cite any instance in the record

16

where it objected to the Weavers' failure to present sufficient evidence on the standard of care. We conclude that the State has waived review of this issue.

¶44 *4. Whether the District Court abused its discretion by denying the State's motion to change venue.*

**Standard of Review**

¶45 We review a district court's ruling on a motion for change of venue for an abuse of discretion. *Eklund v. Wheatland Co.*, 2009 MT 231, ¶ 15, 351 Mont. 370, 212 P.3d 297. "The trial judge is uniquely positioned to assess whether a change of venue is called for due to prejudice in the community." *State v. Kingman*, 2011 MT 269, ¶ 40, 362 Mont. 330, 264 P.3d 1104.

**Analysis**

¶46 Section 25-2-201, MCA, provides in relevant part that "[t]he court or judge must, on motion, change the place of trial" when "there is reason to believe that an impartial trial cannot be had therein," or "when the convenience of witnesses and the ends of justice would be promoted by the change." Section 25-2-201(2)-(3), MCA. We recently clarified that prejudice may be actual or presumed. Presumed prejudice occurs when "prejudicial, inflammatory publicity about a case has so saturated the community as to warrant a presumption that an impartial jury cannot be drawn therefrom." *Kingman*, ¶ 42. Actual prejudice is established when it is shown, "through voir dire or other means[,] that the jury pool harbors actual partiality or hostility against the defendant that cannot be laid aside." *Kingman*, ¶ 32.

17

¶47     As noted, prior to trial, the State moved to change venue on the basis of articles in the *Philipsburg Mail* that allegedly were "clearly biased in favor of Plaintiffs." The State asserted that, within one month before trial, the *Philipsburg Mail* published "three (3) separate articles which indicted the Defendants for setting a fire that burned onto Plaintiffs' property and further reports that one of the supervisors on the fire apologized for having burned across the Plaintiffs' property." The State suggested that these articles were "prejudicial and inflammatory information about the alleged cause of the fire" and that, given the large readership of the newspaper, small population of Granite County, and small size of the jury pool, an impartial jury could not be obtained.

¶48     During its March 29, 2012 hearing, the District Court considered the parties' arguments and denied the State's motion to change venue. The court explained that the State had not demonstrated presumed prejudice on the basis of "one edition of the Philipsburg Mail that discussed the trial," and also would not be able to demonstrate actual prejudice until voir dire had taken place. To address the State's concerns, the court proposed a process by which it would attempt expeditiously to add thirty-five jurors to the current pool. Both parties expressed agreement with that procedure:

> [THE COURT:] So Plaintiff are you okay with that process for going back to fill in the jury?
>
> MR. RHOADES: Yes, Your Honor, so stipulated.
>
> THE COURT: Okay. And Mr. Sheridan?
>
> MR. SHERIDAN: We would so stipulate, Your Honor.

18

The District Court also stated that it would increase the amount of time permitted for jury selection.

¶49 During voir dire, the State struck several prospective jurors for cause, but ultimately agreed to the twelve empanelled jurors, stating, "[w]e would pass these jurors for cause, Your Honor." The State does not reference on appeal, and the record does not reflect, any objection made by the State at trial that an impartial jury could not be selected. Nor did the State renew its motion for change of venue at the conclusion of voir dire. We made clear in *Kingman* the standards and procedures for analyzing presumed and actual prejudice. Though analyzed in the context of a criminal proceeding, both parties cite *Kingman* on this point and we agree that its analysis applies here:

> As the basis of a motion for change of venue, the defendant may allege presumed prejudice, actual prejudice, or both. Where presumed prejudice is alleged—meaning that the court is being asked to presume that jurors selected from the community cannot be impartial—the bar is extremely high. The defendant must demonstrate that an irrepressibly hostile attitude pervades the jury pool or that the complained-of publicity has effectively displaced the judicial process and dictated the community's opinion as to the defendant's [liability]. . . . Where such extreme circumstances are not present, and actual prejudice is alleged, the defendant must show through voir dire or other means that the jury pool harbors actual partiality or hostility against the defendant that cannot be laid aside.

*Kingman*, ¶ 32.

¶50 The State does not argue presumed prejudice on appeal. It argues, rather, that the record shows actual prejudice demonstrated by the prospective jurors during voir dire. By its failure to renew the motion, however, the State did not give the District Court an opportunity to revisit the venue ruling on the basis of any "actual partiality or hostility"

19

evidenced during voir dire. Under these circumstances, the State effectively acquiesced in the District Court's ruling denying the motion to change venue and failed to preserve the issue for appeal. Section 1-3-207, MCA; *Horn*, ¶ 25; *In re A.A.*, ¶ 26.

¶51    *5.    Whether the District Court abused its discretion by denying the Weavers' motion for sanctions against the State.*

**Standard of Review**

¶52    This Court will reverse a trial court's refusal to invoke M. R. Civ. P. 37 sanctions "only when the trial court's judgment materially affected the substantial rights of the parties or allowed a possible miscarriage of justice." *In re Marriage of Rada*, 263 Mont. 402, 406, 869 P.2d 254, 256 (1994). We review a trial court's rulings on post-trial motions for abuse of discretion. *State ex rel. State Compen. Mut. Ins. Fund v. Berg.*, 279 Mont. 161, 175, 927 P.2d 975, 983 (1996).

**Analysis**

¶53    The Weavers sought an award of attorneys' fees and prejudgment interest as a result of what they allege to be "egregious" discovery abuse by the State. The Weavers' motion arose from their realization during trial that some photographs of the fire taken by State witnesses had not been produced in discovery or bore incorrect dates, and their claim that a video of the fire was untimely produced and also had an incorrect date. The Weavers alleged that the State knowingly sponsored inaccurate trial exhibits and deliberately failed to produce requested photographs until after the trial had concluded.

¶54    While the State admitted that the videotape of the Ryan Gulch Fire, which was provided shortly before trial, should have been disclosed in a more timely manner, the

20

District Court concluded that there was no indication that the State had acted in bad faith and that the Weavers had not shown that the State had concealed, destroyed or altered any documents. The court observed, rather, that it became apparent immediately before and during the trial that some of dates captioned were inconsistent with metadata on the photographs, which one witness explained during his testimony. The court further observed that the incorrect date on the video was brought out during cross-examination of another witness. The District Court noted the importance of the evidence concerning the status and location of the fire on various dates and commented that, had the trial produced a different outcome, the dates on the photographs "might well be problematic." In light of the verdict, however, the court could "conceive of no prejudice to the Plaintiffs."

¶55　On appeal, the Weavers have offered no additional reasons for concluding that the State acted willfully or in bad faith. While they posit that the verdict on their inverse condemnation claim "could well have" been different had the Weavers received accurate and unedited photographs and video before trial, this claim is speculative. The Weavers have failed to demonstrate that the trial court's judgment "materially affected the substantial rights of the parties or allowed a possible miscarriage of justice." *Marriage of Rada*, 263 Mont. at 406, 869 P.2d at 256. The trial court was in the best position to evaluate the State's lack of bad faith and the absence of prejudice to the Weavers and did not abuse its discretion in denying their motion for sanctions.

21

## CONCLUSION

¶56    The judgment of the District Court is affirmed.


/S/ BETH BAKER


We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ BRIAN MORRIS