DA 06-0314

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 228

IN RE THE MARRIAGE OF

DAVID CLAY,

   Petitioner and Respondent,

 and

CAROL HAGEDORN,

   Respondent and Appellant.

APPEAL FROM: District Court of the Twentieth Judicial District,
      In and For the County of Sanders, Cause No. DR-04-05
      Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

     Evonne Smith Wells; Wells & McKittrick, Missoula, Montana

   For Respondent:

     Robert A. Terrazas; Terrazas Law Offices, Missoula, Montana

         Submitted on Briefs: February 28, 2007

             Decided: September 11, 2007

Filed:

     _____
           Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     Carol Hagedorn (Carol), also known as Carol Konen, appeals from orders entered by the Twentieth Judicial District Court, Sanders County, denying motions which sought to amend a parenting plan by changing residential custody, and awarding David Clay (David) costs and attorney fees.  We reverse and remand for further proceedings consistent with this Opinion.

¶2     The restated issues on appeal are:

¶3     1.  Did the District Court err in determining the evidence was insufficient to establish a change in the children's circumstances?

¶4     2.  Did the District Court err in awarding costs and attorney fees to David?

**BACKGROUND**

¶5     David and Carol both resided in Thompson Falls when the District Court entered a decree dissolving their marriage in July of 2004.  The decree incorporated a stipulated parenting plan, pursuant to which David and Carol would parent their four minor children— ages 12, 10, 8 and 7—"on an equal basis, using a 2/2/3-day rotation," with provisions for holidays and other special days.

¶6     In December of 2004, Carol filed notice of her intent to move to Polson the following summer, together with a proposed amended parenting plan including a proposed revised residential schedule, pursuant to § 40-4-217, MCA.  She also moved for the appointment of a guardian ad litem.  Carol characterized the existing parenting plan as "very difficult," and

2

expressed concern that David's animosity toward her would increase in light of her move to Polson. Carol's proposed amended parenting plan retained the parties' joint authority and responsibility for the children, but proposed that the children would reside primarily with Carol and stay with David every other weekend, with other provisions for holidays and the like.

¶7    David opposed Carol's proposed amended parenting plan and motion for appointment of a guardian ad litem. He timely filed his own proposed amended parenting plan including a proposed revised residential schedule, as required by § 40-4-217, MCA. David proposed the children primarily reside with him and stay with Carol on alternating weekends during school years, and alternate every two weeks between the parents' residences during summers, with additional provisions for holidays and the like.

¶8    The District Court held a hearing in February of 2005. After Carol presented her evidence and testimony—and before David presented his case—the court ruled from the bench that insufficient evidence supported changing the parenting plan. The court acknowledged Carol's right to move, but expressed concern about reducing David's parenting time, especially since a mediator assisted with the stipulated parenting plan in June of 2004. The court requested the parties to discuss whether they could reduce their conflicts without assistance from a guardian ad litem.

¶9    Shortly thereafter, the District Court entered its order denying both parties' proposed amended parenting plans. It reiterated its oral ruling that the evidence was insufficient, and stated it would not reduce David's parenting time or "change the children's circumstances"

3

because Carol desired to move. The District Court took Carol's motion for appointment of a guardian ad litem under advisement.

¶10    In July, Carol filed notice of her change of address to a Polson post office box, and renewed her motion for appointment of a guardian ad litem. David responded.

¶11    Later that month, the District Court appointed Nancy Combs as guardian ad litem to secure recommendations for resolution of the parties' problems with the parenting plan, implement visitation, and initially establish workable guidelines and schedules for visits. The court noted its previous rejection of the proposed amended parenting plans and the reasons therefor.

¶12    Combs first reported the parties' agreement to a temporary parenting schedule of alternating weeks, with the children continuing school in Thompson Falls and having Monday evening visits with the off-week parent. She also requested additional time to investigate the reasons underlying the three youngest children's wishes to stay with Carol. In her second report, Combs recommended that the oldest child reside primarily with David, with visits to Carol every other weekend, and that the three younger children reside primarily with Carol, with visits to David every other weekend. David objected to Combs' recommendations and moved to strike portions of her second report. Carol responded, requesting that the court adopt Combs' recommendations.

¶13    The District Court entered its second order denying proposed changes to the parenting plan in November of 2005, reiterating its earlier reasoning and characterizing its appointment of Combs as an effort to facilitate a mutual resolution. The court reasoned Combs'

4

recommendations "would have resulted in a change of living arrangements but cite no substantial change in circumstances not considered by the Court at the time of the Court's previous order." On that basis, the court concluded it lacked authority to modify the parenting plan.

¶14 Carol moved the District Court to alter its November order and adopt Combs' recommendations. David responded, and moved for costs and attorney fees based on both a provision in the parenting plan and § 40-4-110, MCA. The District Court denied Carol's motion and granted David's motion. Carol appeals.

## STANDARD OF REVIEW

¶15 We recently clarified that a district court's assessment of the sufficiency of the evidence is a question of law which we review *de novo*, regardless of the context of the court's determination, because evidence is legally sufficient under applicable rules or it is not. *See Giambra v. Kelsey*, 2007 MT 158, ¶¶ 26-27, 338 Mont. 19, ¶¶ 26-27, 162 P.3d 134, ¶¶ 26-27; *State v. Swann*, 2007 MT 126, ¶¶ 18-19, 337 Mont. 326, ¶¶ 18-19, 160 P.3d 511, ¶¶ 18-19; *Johnson v. Costco Wholesale*, 2007 MT 43, ¶¶ 18-19, 336 Mont. 105, ¶¶ 18-19, 152 P.3d 727, ¶¶ 18-19. Thus, we review the District Court's legal conclusion that the evidence was insufficient to establish a change of circumstances to determine whether it is correct.

## DISCUSSION

¶16 *1. Did the District Court err in determining the evidence was insufficient to establish a change in the children's circumstances?*

¶17 Section 40-4-219(1), MCA, provides, in pertinent part, that a court may amend a prior parenting plan if it finds, upon the basis of facts that have arisen since the prior plan, that a

5

change has occurred in the circumstances of the child and amendment is necessary to serve the child's best interests. The District Court made no findings regarding any facts arising since the stipulated parenting plan and dissolution decree. It concluded the evidence was insufficient to establish that the children's circumstances had changed and, as a result, it lacked authority under § 40-4-219(1), MCA, to proceed further.

¶18 On appeal, Carol contends her move to Polson subsequent to the stipulated and incorporated 2/2/3-day parenting plan resulted in changed circumstances for the children. David asserts Carol's decision to move need not affect the children's circumstances.

¶19 Both parties advance parenting plan cases, some of which address prior versions of § 40-4-219(1), MCA, which differ from the version applicable here. None of the advanced cases addresses a district court's legal conclusion that evidence was insufficient to establish a change in the child's circumstances.

¶20 In any event, as set forth above, we review a court's conclusion regarding the sufficiency of the evidence for correctness. *See Giambra*, ¶¶ 26-27. Stated in the context of this case, the issue is whether the District Court erred in concluding insufficient evidence based on post-dissolution facts established a change in the children's circumstances. Thus, we turn to the record before us.

¶21 At the time of the stipulated 2/2/3-day parenting plan and dissolution decree in 2004, Carol and David lived within five miles of each other in Thompson Falls. In Carol's pre-hearing affidavit, she referred to her intended move to Polson, and asserted the parenting plan was difficult and the two boys were having a difficult time with the transitions between the

6

Thompson Falls households. David responded via an affidavit maintaining the children had—with the assistance of a counselor—made progress in adjusting to the 2/2/3-day parenting plan, and asserting Carol's intended move would "disrupt" that progress and would make it impossible for both parents to have frequent and continuous contact with the children. He further asserted his proposed parenting plan—which provided that the children would primarily reside with him in Thompson Falls—would allow the children to stay in a familiar home, community and environment with their close friends, family members, teachers and other people that had been part of their lives.

¶22 At the February 2005 hearing, Carol's attorney asked how the 2/2/3-day rotation had been working for the children, and Carol responded "[h]orrible." Carol further testified the oldest child was having academic and other difficulties, and she felt she could not give him needed structure and discipline every two days. Carol also related that her older daughter was regularly taking her clothing to David's in grocery bags rather than wearing the clothes kept for her at David's house, and Carol needed to "coax[]" her to go to David's and assure her that she would return to Carol's. In addition, Carol testified that she felt the transitions in the 2/2/3-day rotation were upsetting the children's routines, because she had trouble getting them to bed and "it sounds like they're toddlers, but they don't sleep well." Carol testified she believed Polson provided more opportunities for the children than Thompson Falls, the children were excited about the move and they did not have needed stability during their week under the existing plan. David did not testify at the February 2005 hearing because, as mentioned above, the District Court ruled after Carol rested her case and before David

7

presented his.

¶23 The District Court ruled from the bench that the evidence was insufficient that the children's circumstances had changed due to Carol's intended move. The court also stated its concern about "the difficulty of the transfer back and forth and how often that's taking place" and expressed willingness to consider a stipulation by the parties to adjust portions of the parenting plan.

¶24 We note the District Court was technically correct about the lack of a change in the children's circumstances at the time of the hearing in February of 2005, insofar as Carol's intended move had not yet occurred. However, since 1997, § 40-4-217, MCA, has required a parent who intends to change residence in a manner that will significantly affect the child's contact with the other parent to submit a proposed revised residential schedule. Read together, §§ 40-4-217 and -219(1), MCA, clearly contemplate that parties and district courts exercise foresight in relation to proposed amended parenting plans with proposed revised residential schedules. Here, the District Court persisted in its ruling after Carol's move and Combs' reports.

¶25 The record since the February 2005 hearing reflects that Carol has moved, and the children travel approximately 90 miles each way between Polson and Thompson Falls to transfer between households and to attend school in Thompson Falls when staying with Carol in Polson. In addition, Carol has established a household with her current spouse and his four children, and she was expecting another baby after the February 2005 hearing. Combs also reported that David intended to move in with his current significant other, who also has

8

children.  When the 2/2/3-day rotation was implemented, the children were not driving 90 miles per day to go to school or between households, and they were not living with any other children or adults.

¶26    We hold the evidence of record in the present case establishes as a matter of law that, based on facts which arose since the original 2/2/3-day parenting plan, a change in the children's circumstances occurred.  Consequently, we also hold the District Court erred in concluding otherwise.  Thus, we remand for the District Court's determinations of whether an amendment to the parenting plan is in the best interest of the children and, ultimately, whether and how it should amend the parenting plan.

¶27    Because the District Court's decisions on remand will necessarily factor into a subsequent decision on whether to award attorney fees, we vacate the District Court's award of attorney fees and costs to David.


¶28    Reversed and remanded for further proceedings consistent with this Opinion.


                                                    /S/ KARLA M. GRAY

We concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS


Justice John Warner dissents.

9

¶29 I dissent from the Court's holding that the evidence of record in this case establishes as a matter of law that a change in circumstances has occurred. In order to reach this conclusion this Court engages in fact finding. It is true that if Carol is believed, the District Court could have found that the change of circumstances requirement in § 40-4-219(1), MCA, has been met. However, in my view, the real problem is that the District Court made no findings of fact regarding any change in circumstances since the prior parenting plan was adopted. This is acknowledged by the Court at ¶ 17.

¶30 The District Court may have had good reasons for holding that the evidence was insufficient to establish a change in circumstances. The record in this case shows that these might well include that Carol is not credible, or that she orchestrated the move to Polson for the sole purpose of severely limiting David's time with the children.

¶31 I would remand to the District Court with directions to make appropriate findings of fact concerning why it reached the legal conclusion that there was no change in circumstances requiring a new parenting plan. M. R. Civ. P. 52(a); *Marriage of Jacobson*, 2006 MT 212, ¶ 19, 333 Mont. 323, ¶ 19, 142 P.3d 859, ¶ 19. I would not leap directly to the legal conclusion that the required change in circumstances has been established, without knowing the facts. I dissent from the Court's decision to do so.

/S/ JOHN WARNER

10