

DA 12-0065

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 304

DANA MARIE BADGETT FINK,
Personal Representative of the Estate
of David M. Schraudner, a/k/a David
Martin Schraudner, Deceased,

      Plaintiff and Appellee,

   v.

ROBERTA J. WILLIAMS,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourteenth Judicial District,
                  In and For the County of Golden Valley, Cause No. DV-09-03
                  Honorable Randal I. Spaulding, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Randy S. Laedeke, Laedeke Law Office, Billings, Montana

        For Appellee:

                Jeff A. Turner, Towe, Ball, Enright, Mackey & Sommerfeld, P.L.L.P.,
                Billings, Montana

                               Submitted on Briefs:  October 2, 2012

                                       Decided:  December 24, 2012

Filed:

                  _____
                                  Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 David Schraudner, deceased, was the uncle of Dana Fink and her brother, Dustin Badgett. In 2000, Schraudner executed his Last Will and Testament and devised his estate to Fink and Badgett. In April 2009, approximately seven weeks before his death, Schraudner signed a Quitclaim Deed conveying substantial real property to himself and Roberta Williams as joint tenants with right of survivorship. After Schraudner's death, Fink challenged the validity of the Quitclaim Deed, arguing her uncle was not competent to execute such a deed. The Fourteenth Judicial District Court conducted a two-day bench trial at which considerable testimony was presented. The District Court held that the Quitclaim Deed was void and had no legal effect. The court also denied Williams' request for reimbursement for the mortgage and tax payments she had paid on the subject property for the approximately 2.5 years during which she held the property under the Deed. Williams appeals the reimbursement ruling only. We affirm.

## ISSUES

¶2 The dispositive issue before us is whether the District Court erred in denying Williams' request for reimbursement of the monies she paid toward the mortgage and taxes on the property.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 In February 2000, David Schraudner executed his Last Will and Testament (Will) naming his niece Dana Fink as his Executor. In this Will, he devised his tangible and real property to Fink and her brother, Dustin Badgett, in equal shares. At no time did Schraudner revoke this Will.

2

¶4 For the last few years of his life, Schraudner had numerous physical and mental problems, many caused by excessive alcohol consumption. In 2006, Williams, who had known Schraudner since childhood and who was then in her late twenties, began doing simple jobs on a part-time hourly basis for Shraudner, such as feeding the cows, mending fences, and driving Schraudner to doctor appointments. In 2008, she began working full time for Schraudner for a monthly salary. Over time, she assisted Schraudner with bill paying by writing checks from his bank accounts on his behalf. She also began helping him manage his health care by reminding him to take the correct doses of prescribed medication at the correct times.

¶5 On March 10, 2009, Schraudner executed a new health care power of attorney naming both Fink and Williams as agents. He expressly revoked all previous health care powers of attorney. On April 22, 2009, Schraudner executed a Quitclaim Deed, prepared by Attorney Randy Laedeke, Williams' attorney in the case before us. In this Deed, Schraudner quitclaimed more than 3,000 acres of real property located in Golden Valley County, Montana, to himself and to Williams as joint tenants with right of survivorship. Schraudner died approximately seven weeks later on June 12, 2009.

¶6 On August 27, 2009, Fink filed a Complaint against Williams asserting that at the time the Quitclaim Deed was executed: (1) Schraudner did not understand the effect of the Deed; (2) he was not competent to execute such a document; and (3) Williams exercised undue influence over him. Williams answered the allegations set forth in the Complaint but did not file a counterclaim.

¶7 Discovery took place during 2010 and early 2011. In January and February 2011, two of Schraudner's physicians recorded video depositions totaling slightly more than five hours of testimony. On May 23, 2011, the District Court issued the Pretrial Order and conducted the first day of the trial.

¶8 The Pretrial Order was detailed and identified numerous factual and legal issues to be determined at trial. While not previously raised by Williams, the Pretrial Order nonetheless included the following "Defendant's Contention":

> Roberta Williams has paid the mortgage and property taxes since the death of David Schraudner. She has paid Farm Credit services a payment of $22,586.50 and $21,973.02 and paid the Golden Valley County Treasurer $874.94 and $887.19 for property taxes on the subject property. She should be reimbursed those amounts of expenses to retain the property in the event the Court rules in favor of Plaintiff's [sic] on the other issues.

Because it was included in the Pretrial Order, Williams' reimbursement claim presented a legitimate issue for trial. The Pretrial Order also addressed trial management and indicated that the court would set aside two days for the trial. The parties signed the Pretrial Order.

¶9 On the first day of trial, Fink put on her case-in-chief. Two of Schraudner's sisters, a longterm acquaintance of Schraudner's, and Fink testified on May 23 over the course of approximately five hours. These witnesses testified to the noticeable and severe decline in Schraudner's physical and mental health and personal hygiene over the last few years of his life. At the close of the first day of trial, Fink's counsel indicated he had one witness left—Roberta Williams. The District Court determined that, given the

4

lateness of the hour, Williams' testimony would be heard on the second day of trial. The second day of trial was scheduled for June 17, 2011.

¶10     At the start of the second day of trial, the District Court informed the parties that the trial would conclude that day at 5 p.m. The court therefore limited Fink's counsel to one hour in which to question Williams, reserving the remainder of the day, exclusive of breaks and lunch, for Williams' case-in-chief. Fink questioned Williams for 61 minutes. At the close of Williams' testimony, Williams' attorney was given the opportunity to question his client as part of Williams' case-in-chief. The attorney twice declined, opting to re-call Williams to the stand later in the day. For the remainder of the day, Williams' attorney questioned eight separate witnesses who testified that Schraudner was competent to execute the Quitclaim Deed and was not unduly influenced by Williams. Counsel did not recall Williams to the stand.

¶11     At 5:40 p.m., the District Court requested summation from counsel. Williams' attorney asked that the court find another one-half day to continue the trial. He argued that he had not yet had a chance to put Williams back on the stand. The District Court denied Williams' request.

¶12     In December 2011, the court issued its Findings of Fact, Conclusions of Law and Order (Order). It ruled the Quitclaim Deed was void and without legal effect as Schraudner was not competent to execute such a document. The District Court's Order summarized, in much detail, the testimony of several witnesses including Schraudner's two physicians who had not been present during trial but who had provided testimony through recorded depositions.

5

¶13 In addition to ruling that Schraudner's cognitive impairment prevented him from understanding the nature and effect of the Quiclaim Deed, the court also denied Williams' request for reimbursement of the amounts paid toward the mortgage and taxes on the property during the 2.5 years she held title. The court determined that Williams presented no evidence to support her claim for reimbursement; therefore, "the equities would appear to justify a finding that . . . such payments should be treated as compensation for the reasonable rental value of the property." It is from this decision that Williams' appeals.

## STANDARD OF REVIEW

¶14 A district court's assessment of the sufficiency of the evidence is a question of law which we review de novo, regardless of the context of the court's determination, because evidence is either legally sufficient under applicable rules or it is not. Accordingly, we review the District Court's legal conclusion that evidence is insufficient to determine whether it is correct. *In re Marriage of Clay*, 2007 MT 228, ¶ 15, 339 Mont. 147, 168 P.3d 665 (citations omitted).

## DISCUSSION

¶15 *Did the District Court err in denying Williams' request for reimbursement of the monies she paid toward the mortgage and taxes on the property?*

¶16 It is undisputed that Williams presented no evidence to support her claim for reimbursement. She did not testify regarding the request nor did she offer exhibits or other witness testimony in support of the claim. As a result, the District Court was without any legal basis upon which to award reimbursement amounts to Williams.

¶17 Williams claims the reason she was unable to testify as to the reimbursement claim is because the District Court refused to extend the trial beyond the two-day trial period set forth in the Pretrial Order. It is true the court refused to extend the trial, but the court's decision in this regard was within the exercise of its discretion.

¶18 The District Court has broad discretion in determining issues relating to trial administration. *Buhmann v. State*, 2008 MT 465, ¶ 41, 348 Mont. 205, 201 P.3d 70. In *Konitz v. Claver*, 1998 MT 27, ¶ 32, 287 Mont. 301, 954 P.2d 1138, we observed that "[d]iscretionary trial court rulings include such things as trial administration issues, scope of cross-examination, post-trial motions and similar rulings." One matter of "trial administration" is the establishment by the court of "a reasonable time limit on the time allowed to present evidence." M. R. Civ. P. 16(c)(2)(O). The parties were notified in the Pretrial Order, at the beginning of the trial and again at the start of the second day of trial that the trial was calendared for two days. Early on the second day of trial, the court offered Williams the opportunity to present evidence at the close of her examination by Fink but she twice declined the offer, opting to reserve her testimony for later in the trial. Then, during her case-in-chief and knowing of the deadline, Williams chose to call eight witnesses to testify about Schraudner's capacity but failed to schedule time for her own critical testimony. This was a strategic choice that cannot now be used to put the District Court in error.

¶19 Williams complains that the District Court allowed Fink to present almost twice as many hours of testimony than it allowed Williams. This is a misrepresentation of what actually occurred. We note that of the two days set aside for trial, the District Court

7

divided them almost equally between the parties. Moreover, so as not to limit the live testimony that could be considered during the two-day trial, the court reviewed the deposition testimony presented by Schraudner's physicians' on its own time. These depositions included both direct examination and cross-examination by Williams' counsel. Thus, the court actually dedicated two and one half days to the trial, duly considering the positions of both parties.

¶20 We find no abuse of the court's discretion in its management of the trial. Because Williams failed within the time allotted to present evidence in support of her request for reimbursement, the District Court had no evidence before it upon which to base such an award. Therefore, the District Court did not err in denying Williams' request.

¶21 We affirm.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ BRIAN MORRIS
/S/ BETH BAKER
/S/ MICHAEL E WHEAT