FILED

05/31/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0317

DA 21-0317

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 106N

IN RE THE PARENTING OF:
J.M.N., IV,

FRANCESCA C. BECKERLE,

      Petitioner and Appellee,

   v.

JOHN MARSHALL NICHOLS, III,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDR-20-0146
Honorable Elizabeth A. Best, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Patrick F. Flaherty, Daniel Flaherty, Flaherty Gallardo Lawyers, Great Falls, Montana

      For Appellee:

          Dana A. Henkel, Terrazas Henkel, P.C., Missoula, Montana

          Jeffrey S. Ferguson, Attorney at Law, Great Falls, Montana

                         Submitted on Briefs:  May 4, 2022
                                Decided:  May 31, 2022

Filed:

                              _____
                                      Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      John Marshall Nichols, III, appeals the findings of fact, conclusions of law, and order of the Eighth Judicial District Court, Cascade County, adopting a final parenting plan that provides Francesca Beckerle primary custody of John and Francesca's son, J.N., and allows Francesca to relocate to Texas with J.N. We affirm.

¶3      John and Francesca were never married and have been separated since 2019. J.N. was born in 2016. In June 2020, the parties stipulated to an interim parenting plan, effective until August 2020. The parenting plan called for J.N. to reside with Francesca from 10:00 a.m. on Wednesdays until 4:00 p.m. on Saturdays and with John the rest of the week. When John did not abide by the stipulated schedule after it expired, Francesca sought a final parenting plan. After one continuance at John's request, the court set a hearing for October 2020 but continued it to April 2021 on John's second motion. In the meantime, Francesca filed a motion to enforce the interim stipulated parenting plan.

¶4      The court held an interim hearing on November 6, 2020. Francesca's co-worker and soon-to-be mother-in-law both testified on her behalf. The court indicated that it would prefer to hear directly from the parties. Francesca testified that prior to meeting John she

overcame an opioid dependency and had been "clean" since April 2015. For the first two years of J.N.'s life, they lived in Great Falls; John worked, and Francesca was a stay-at-home parent. They switched roles when John briefly was unemployed. When John got a new job with BNSF in Havre, Francesca stopped working until the relationship ended in 2019. After spending three weeks in Wyoming, Francesca returned to Montana and found a full-time job at the Great Falls airport. Because Francesca worked in Great Falls and her housing situation was still unstable, J.N. lived with John in Havre during this period, and John limited the boy's contacts with Francesca to twice per week. Despite finding permanent housing with her fiancé, Francesca testified that John did not increase her visits until the interim parenting plan was established in June 2020.

¶5     John testified that, though sober during their relationship, Francesca struggled to remain so and suffered from depression and suicidal ideations. He said that after the relationship ended, Francesca disappeared to Wyoming without a definite return date and abandoned J.N. He tried to co-parent after Francesca returned, but Francesca either would ignore him or say that she was working. He testified that between June 2019 and May 2020, Francesca saw J.N. only forty-nine times and that only nineteen of those were overnight visits. Because John was furloughed due to COVID-19 in 2020, he stayed home with J.N. full-time. John expressed concern about J.N.'s well-being in Francesca's care. He testified that when J.N. returns from her house he exhibits behavioral issues, has trouble sleeping, and experiences nightmares.

¶6     The court issued a new interim parenting plan after the November 2020 hearing that called for J.N. to reside with Francesca from 4:30 p.m. on Tuesdays until 8:30 a.m. on

3

Fridays and the rest of the week with John. The court ordered Francesca to obtain a chemical dependency evaluation because of her past opioid dependency and her recent "unpredictable" behavior. The court also ordered both parents to attend joint counseling to address their communication and trust issues.

¶7 Francesca married her fiancé in February 2021. Two months later, she filed an affidavit to notify the court that she recently married and planned to move to Texas with her husband, who would be taking a job as a Border Patrol Agent. The court vacated its previously scheduled status hearing, ordered the parties to submit written status reports, and set a final hearing for one hour on May 25, 2021. Ten days before the hearing, John moved for another continuance and requested more time than the allotted hour. The court denied his motion. Francesca filed a proposed final parenting plan, under which J.N. would reside with her in Texas during the school year and with John during winter, spring, and summer breaks.

¶8 At the final hearing, Francesca testified that she and her husband bought a house in a gated community near an elementary school in Texas; that she anticipates working when J.N. is in school; that the Border Patrol assists with childcare if needed; and that she plans to continue joint therapy with John remotely. Francesca described J.N.'s anticipated support system in Texas, which included her husband's family and the Border Patrol community. Francesca also presented J.N.'s preschool attendance record, which showed that on Mondays and Tuesdays, the days he resided with John, he was typically absent or late. Because of concerns John raised at the interim hearing, the court asked Francesca whether her husband interfered with her and John's parenting. Francesca stated that her

4

husband had no communication with John and did not disparage John in any way. The court also questioned Francesca about her chemical dependency recovery, and she testified that she feels confident in her sobriety and plans to find a personal therapist in Texas.

¶9 John testified that when J.N. does not go to school, he spends time with him at home, doing activities and playing video games. John said that he planned to move to Helena and enroll in the civil engineering program at Carroll College; he thought that Helena would be a good place for J.N. John testified that J.N.'s former babysitter, who has two kids of her own, also lives in Helena. John said he was concerned about Francesca's husband because during one of the drop-offs, he became confrontational in front of J.N.

¶10 The District Court reiterated its concerns about the parties' inability to communicate respectfully, stating, "both of you continue to be acrimonious and disrespectful toward each other." After briefly questioning the parties, the court requested argument from the attorneys and had the following exchange with Francesca's attorney:

> [Judge]: And so, from your perspective, it's to some extent—it's a jump ball with the exception of the school attendance?

> [Counsel]: School attendance. And then Francesca's support system is much more significant than, unfortunately for, John. She testified to that. I think that's important. But yeah, I think this is one of those ones that's an extremely close call.

¶11 The court's final parenting plan adopted Francesca's proposed residential schedule: J.N. would reside with Francesca in Texas during the school year and with John in Montana during winter breaks, spring breaks, and summer breaks.

¶12 John raises two arguments on appeal. He contends that when the District Court found most factors in § 40-4-212(1), MCA, to weigh in neither party's favor and only one

slightly in each parent's favor, it abused its discretion by granting primary custody to Francesca in Texas. Second, John asserts error in the court's denial of his third motion for continuance and its refusal to extend the duration of the final hearing.

¶13 "We review a district court's conclusions of law de novo" and its findings of fact "for clear error." *In re Parenting of P.H.R.*, 2021 MT 231, ¶ 7, 405 Mont. 334, 495 P.3d 38 (citations omitted). A finding is "clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence, or, if upon reviewing the record, this Court is left with the definite and firm conviction that the district court made a mistake." *In re Parenting of P.H.R.*, ¶ 7 (citation omitted). "[A]bsent clearly erroneous findings, we will not disturb a district court's decision regarding a parenting plan unless there is a clear abuse of discretion." *In re G.M.N.*, 2019 MT 18, ¶ 11, 394 Mont. 112, 433 P.3d 715 (citation omitted).

¶14 Section 40-4-212(1), MCA, enumerates a non-exclusive list of criteria to determine whether a parenting plan is in accordance with the best interest of the child. It includes considerations such as: "the interaction and interrelationship of the child with the child's parent or parents and siblings and with any other person who significantly affects the child's best interest"; "the child's adjustment to home, school, and community"; "the mental and physical health of all individuals involved"; and "physical abuse or threat of physical abuse by one parent against the other parent or the child." Section 40-4-212(1)(c)-(f), MCA; *see also In re Parenting of P.H.R.*, ¶ 14. "It is not this Court's function to reweigh conflicting evidence or substitute its judgment regarding the strength of the evidence for that of the district court." *In re G.M.N.*, ¶ 11 (citation omitted).

6

¶15    In its findings of fact and conclusions of law, the court applied the "best interest of the child" factors and concluded that most factors did not weigh in favor of either party. The court found that J.N. would have more of a support system in Texas with Francesca, whereas "[l]ittle evidence was presented about his relationship with John's extended family." It thus concluded that "the interaction and interrelationship of the child with . . . any other person who significantly affects the child's best interest" weighed slightly in Francesca's favor. The court also noted that, with respect to the "child's adjustment to home, school, and community," the evidence showed that J.N. missed school while in John's care. The court concluded, however, that this factor was neutral.

¶16    The court found one factor slightly in John's favor—"the mental and physical health of all individuals involved"—because John's testimony suggested that Francesca's husband had "volatile moments." Despite this finding, the court determined that "no evidence was presented regarding physical abuse or threat of physical abuse." The court concluded, therefore, that the separate but related factor—"physical abuse or threat of physical abuse"—weighed in neither party's favor.

¶17    John contends that the court's findings were not supported by substantial credible evidence because, although the court found that Francesca's husband has "volatile moments," it contrarily determined that Francesca's husband was a positive force in J.N.'s life and concluded that "the interaction and interrelationship of the child" factor weighed in Francesca's favor.

¶18    The court's finding that Francesca's husband has "volatile moments" was based entirely on John's testimony: his description of one incident in which the parties argued

7

about the return of a teddy bear during one of the drop-offs. Francesca disputed John's version of the incident and said that John overreacted when asked to return J.N.'s teddy bear. Although the court credited John's testimony that Francesca's husband could be volatile, it also found that the "physical abuse or threats of physical abuse" factor was irrelevant. To guard against John's concerns, the court included a warning in the final parenting plan:

> As noted in the Findings of Fact, Conclusions of Law, and Order Adopting Final Parenting Plan, Jonathan Haseldon (Jonathan), the child's step-father, has interjected himself into the parenting of the child and contributed to animosity and division between or among the parents and the child. If Jonathan continues this behavior, this parenting plan is at risk of modification.

There was substantial credible evidence presented at both the interim and final hearings that J.N. had a close relationship with Francesca's husband's family. By contrast, there is no evidence in the record regarding John's support system for J.N., other than his testimony that he planned to relocate to Helena where J.N.'s former babysitter lived. Substantial evidence supports the court's conclusion that this factor weighed in Francesca's favor, and we will not substitute our own judgment. *See In re G.M.N.*, ¶ 11.

¶19 John asserts that the court failed to take into account other evidence, such as: (a) the sporadic and inconsistent contact that Francesca had with J.N. before the June 2020 interim parenting plan; (b) Francesca's lack of a recovery support system in Texas; (c) Francesca's plan to move to Texas before finalizing a permanent parenting plan and without knowing whether she would have custody of J.N.; and (d) J.N.'s behavioral issues after his visits with Francesca.

8

¶20 Although John testified that Francesca had contact with J.N. only forty-nine times between June 2019 and May 2020, Francesca's testimony indicated that this was largely John's doing and not a result of any failure on her part. Francesca testified that after her relationship with John ended, she worked to rebuild her life as a single parent. She abruptly transitioned from a stay-at-home parent to a full-time airport employee, and she struggled to secure steady housing. Because she could not find employment in Havre, she lived in Great Falls, which made visits with J.N. even more impractical. John testified that he was not burdened in any way during this period because he was furloughed from BNSF and was happy to spend that time reconnecting with J.N.

¶21 Both parties' testimonies show that J.N. spent most of his early years with Francesca, who was a stay-at-home parent for the majority of the child's first three years. John's time with J.N. primarily occurred in the year following the parties' break-up, while Francesca worked full-time, searched for more permanent housing, and lived nearly two hours away. The evidence does not show clear error when the District Court discounted John's forty-nine-day statistic in determining the best interest of J.N.

¶22 Francesca testified that she felt solid in her six-year recovery, and the court appeared satisfied with her chemical dependency evaluation. Following its direct questioning of her, the court found that "Francesca . . . is maintaining her sobriety" and concluded that the "chemical dependency" factor did "not weigh in favor of either parent." John argues that this factor should have weighed in his favor because Francesca did not have a plan for attending twelve-step meetings in Texas. But Francesca had maintained her sobriety for six years and testified that she would continue personal counseling and would consider

9

twelve-step meetings in Texas. Substantial credible evidence supported the court's finding. John has not shown error in the court's application of the "chemical dependency" factor.

¶23 Francesca had purchased a house in Texas prior to the final hearing and testified that she would move with her husband regardless of J.N.'s final residential schedule. Francesca argued that the Border Patrol job was an important, life-altering commitment for her husband and not something he could have given up if the parenting plan required J.N. to stay in Montana. John argues that Francesca's lack of a "back-up plan" regarding her move to Texas indicates that she cannot provide "continuity" and "stability of care" to J.N. The court rejected this argument at the final hearing, and John presents no compelling reason why Francesca's commitment to move to Texas with her husband implies that she cannot provide stability and continuity to J.N.

¶24 The parties vehemently disagreed about the causes of J.N.'s behavioral issues. Francesca testified that these problems stemmed from the lack of consistency in J.N.'s residential schedule and his absences from school, while John blamed Francesca for all of J.N.'s issues. Two witnesses testified that Francesca helped J.N. overcome some of his behavioral issues. The parties did not dispute that J.N. missed significantly more days of school in John's custody than he did in Francesca's custody. The District Court found that "J.N. is having difficulty because of frequent changes in residence, which result in emotional upheaval and John's decision, whether wise or not, to keep him home from school for support." The court concluded that the "child's adjustment to home, school, and community" factor weighed in neither party's favor. The Judge indicated the importance of this factor at the final hearing, when she stated that, although this case was close, the

10

attendance issue tipped in Francesca's favor. The court therefore acknowledged that the inconsistent schedule and the absences from school likely caused or contributed to J.N.'s behavioral problems. We find no error in the court's assessment of this evidence.

¶25 The court admonished John at both hearings that it was not in his or J.N.'s best interest to "keep score" or to "dig up every single skeleton [he] can find" and use it to attack Francesca. Yet he continued his attempts to portray her as a drug addict and a neglectful parent. The court did not find support for this narrative in the evidence, and John has not shown clear error. "Like many child custody cases, the parties' circumstances required the court to make difficult choices. . . . The court needed to select a primary residential parent and it did so." *In re Marriage of Crowley*, 2014 MT 42, ¶ 46, 374 Mont. 48, 318 P.3d 1031. Upon review of the record, we conclude that the court's findings of fact were not clearly erroneous and that it did not abuse its discretion in applying the "best interest of the child" factors. *See Crowley*, ¶ 44.

¶26 John argues for the first time on appeal that the court should have considered the 2021 Legislature's House Bill 393 (HB 393) in its analysis of the "best interest of the child" factors. HB 393 codified additional "best interest of the child" factors for modifications of parenting plans when one parent intends to move "in a manner that significantly affects the child's contact with the other parent." *See* § 40-4-219(1)(b), MCA; HB 393, 67th Reg. Sess., Ch. No. 219 (Mont. 2021). Conceding that the bill went into effect months after the final hearing, John contends nonetheless that the court should have considered it as persuasive authority. John does not present a compelling argument, and we decline to

11

consider this claim for the first time on appeal. *See Paschen v. Paschen*, 2015 MT 350, ¶ 39, 382 Mont. 34, 363 P.3d 444.

¶27 Finally, John argues that the District Court abused its discretion when it denied John's third motion for continuance and limited the final hearing to one hour. We review for abuse of discretion a district court's decision to grant or deny a continuance. *In re Marriage of Fishbaugh*, 2002 MT 175, ¶ 11, 310 Mont. 519, 52 P.3d 395. A district court "has broad discretion in determining issues relating to trial administration," including the imposition of a "reasonable time limit on the time allowed to present evidence." *Fink v. Williams*, 2012 MT 304, ¶ 18, 367 Mont. 431, 291 P.3d 1140 (quoting M. R. Civ. P. 16(c)(2)(O)).

¶28 On May 4, 2021, the District Court scheduled the final hearing for May 25, 2021. On May 14, 2021, John filed a status report and moved to continue the final hearing for three reasons: (1) the hearing was set for only one hour, which was not enough time; (2) the parties should be given more time to prepare a proposed parenting plan; and (3) the parties did not have a chance to subpoena witnesses. Though John's motion appears to suggest that there was an "absence of evidence," John did not provide any affidavits in support of his motion to continue, nor did he indicate the "materiality of the evidence expected to be obtained." *See* § 25-4-501, MCA; *In re O.A.W.*, 2007 MT 13, ¶ 79, 335 Mont. 304, 153 P.3d 6.

¶29 The record shows that the court wanted primarily to hear from the parents and their counsel. It had heard testimony from other witnesses at the interim hearing and indicated that the testimony was not very helpful in the ultimate determination of the parenting plan.

John did not argue, moreover, that a third continuance would be "in furtherance of justice," nor did he provide "good cause," as required by § 25-4-503, MCA. The court was mindful of the timing as well: J.N.'s residential schedule had changed at least three times within a year, and Francesca was preparing to move from Montana to Texas. Additionally, the record contradicts John's assertion that he did not have time to submit a proposed final parenting plan because Francesca filed a proposed final parenting plan after the court scheduled the final hearing. That John failed to do the same does not establish prejudice.

¶30 Similarly, John does not show how he was prejudiced by the one-hour time limit at the final hearing. He fails to identify any additional evidence he would have presented. The transcript shows that John and Francesca both testified and were cross-examined, and the court questioned them and their attorneys. Additionally, they both testified at the interim hearing and presented documentary evidence at both proceedings.

¶31 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. Under the applicable standards of review, we conclude that the District Court did not err in determining the best interest of the child or abuse its discretion when it denied John's motion to continue and limited the final hearing to one hour. We affirm the District Court's findings of fact, conclusions of law, and order adopting the final parenting plan.

/S/ BETH BAKER

13

We Concur:

/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE