FILED

July 7 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0728

DA 14-0728

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 193

IN RE THE MARRIAGE OF:

JULIE A. CARLE, f/k/a JULIE A. STEYH,

       Petitioner and Appellee,

  v.

WILLIAM T. STEYH,

       Respondent and Appellant.

APPEAL FROM:    District Court of the Second Judicial District,
                   In and For the County of Silver Bow, Cause No. DR 12-6KK
                   Honorable Kurt Krueger, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Christopher J. Gillette, The Law Office of Christopher J. Gillette, PC,
              Bozeman, Montana

       For Appellee:

              Bernard J. "Ben" Everett, Everett Law, PLLC, Anaconda, Montana

                              Submitted on Briefs:  April 1, 2015
                                    Decided:  July 7, 2015

Filed:

                                                 Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1     William T. Steyh (William) appeals the decision of the Second Judicial District Court, Silverbow County, holding that William's statements during a prior dissolution hearing were judicial admissions, and thus precluding William from offering evidence contradicting those statements in a subsequent hearing.  We reverse and remand.

¶2     William raises two issues on appeal, which we restate as follows:

1.     *Whether the District Court erred in ruling that William's statements made during the March 16, 2012 dissolution hearing constituted judicial admissions.*

2.     *Whether the District Court erred in precluding William from presenting evidence related to the value of the real property at issue based upon these alleged judicial admissions.*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3     The factual background of this dispute has been described in an earlier opinion entitled *Steyh v. Steyh*, 2013 MT 175, 370 Mont. 494, 305 P.3d 50.   Therefore, we review only the factual background of this dispute and refer the reader to *Steyh* for broader context. *Steyh*, ¶¶ 3-7.

¶4     After less than two years of marriage, Julie Steyh (Julie) filed a pro se dissolution petition with the District Court.  In her dissolution petition, Julie included a proposal for the distribution of their marital assets, in which William would be awarded, *inter alia*, ownership of the couple's house and real property on Hobson Street in Butte, Montana.   William accepted service of the Notice and Acknowledge of Service, which indicated that a failure to answer would result in a judgment being rendered against him for the relief requested by

2

Julie. Additionally, the Summons stated that a failure to appear or respond would result in a default judgment for the relief requested. Because William did not object to either the dissolution petition or Julie's marital asset distribution proposal, William elected to default. His default was entered by the clerk on February 8, 2012.

¶5 On March 16, 2012, the District Court held a final dissolution hearing. Both parties appeared pro se. After the parties agreed to dissolve the marriage, the court turned its attention to the proposed distribution of property and focused primarily on the Hobson Street house:

> [Court] Q. You've asked for the entire house in this matter. Would you explain to the Court your basis for asking for the entire house.
>
> [William] A. Your Honor, I didn't ask for anything in the house. I was served papers . . . .

The court sought clarification on the manner in which the Hobson Street house was refinanced during the couple's marriage, and whether Julie had acquired equity in the house after having owned the property for 13 years prior to their marriage.

> [Court] Q. Okay. And how much did you finance?
>
> [William] A. At that time, it was 210,000, because there was actually two appraisals. There was one through Mike McLeod that came in – and I could prove to the Court, but not today, but I think it came in right around 235, which at that time, Glacier Bank – we needed to borrow 80 percent to get to the 210, to pay off the 110, to consolidate the two as one loan.
>
> So then at that time talking with Glacier Bank, then there was – I don't recall, your Honor, of who the other appraiser was. Another appraiser came in at 265. So that allowed us to borrow on the 210,000 to pay off the [existing loans held by] PHH and First Interstate Bank.
>
> [Court] Q. So how much did you borrow?

3

[William] A. 210,000.

[Court] Q. So there's $50,000 worth of equity in the house right now?

[William] A. Well, that's – that could be disputed because of two different appraisals of – you know – I mean, within a couple weeks, that's how – because it was basically, your Honor, to get an appraisal high enough to where we could consolidate the two loans together.

¶6 In light of this inquiry, William urged the court to consider the improvements he had made on the house during their marriage, including landscaping projects, floor joist repairs, and a boiler replacement. The appraisal reports were not offered into evidence and neither appraiser was present during the hearing.

¶7 Citing its legal duty to provide an equitable division of property, the court found Julie's proposed division of property to be unfair. The court explained:

> The Court would note that she deeded the property to the respondent [William] on December of 2011 and that the respondent has subsequently taken out a new mortgage of approximately $210,000. And there is an evaluation at approximately 265.

> The Court notes that the petitioner [Julie] had significant equity in the home at the time of marriage and there hasn't been compensation for that. And while it's very difficult without an appraisal, things like that, the Court at this time finds that the marriage of the parties is irretrievably broken.

¶8 The court adopted Julie's proposed distribution of assets with an amendment that obligated William to pay Julie $30,000 over three years as a means to compensate Julie for any earned equity in the Hobson Street house. On April 3, 2012, the court issued its Findings of Fact, Conclusions of Law and Final Decree of Dissolution incorporating the "$30,000 equalization payment."

4

¶9 On July 3, 2012, William through counsel filed a Motion for Relief from Judgment. The District Court never ruled on William's motion and it was deemed denied pursuant to M. R. Civ. P. 60(c)(1). On September 12, 2012, after the motion was deemed denied, the court issued an order setting forth its reasons for denying William's motion. William appealed the court's decision. On July 2, 2013, we reversed and remanded for further proceedings after concluding that the District Court erred in not setting aside the judgment. We concluded

> [T]hat the District Court surprised William by not giving him advanced notice that it might award Julie more than she had requested in her petition and by not giving William a meaningful opportunity to contest the distribution of assets before rendering a final judgment.

*Steyh*, ¶ 12. We noted that "[a]fter setting aside the judgment, the court should have rescheduled the hearing to provide William with a meaningful opportunity to be heard and present an argument." *Steyh*, ¶ 13.

¶10 On remand, the District Court allowed the parties to conduct additional discovery and entered a scheduling order setting dates for expert disclosures deadlines, a mandatory settlement conference, and a non-jury trial. The court ordered the parties to submit their Proposed Findings of Fact and Conclusions of Law at least one week before trial. With the assistance of counsel, the parties submitted a consolidated Pre-Trial Order with the sole issue before the District Court being "equitable division of the house located" on Hobson Street.

¶11 William disclosed a list of expert and lay witnesses, including a home inspector who performed an inspection of the property in October 2013, two construction workers who examined the property for repairs in October 2013, and a real estate agent who had also inspected the property. William also disclosed his proposed exhibits and an income and

5

expense disclosure statement. Julie did not identify any lay or expert witnesses beyond herself, William, and all witnesses listed by William.

¶12 In the Pre-Trial Order, Julie urged the court to adopt its prior decision from the March 16, 2012 dissolution hearing, in which the court imposed the "$30,000 equalization payment." William argued that at the time Julie provided her initial proposal, he was unaware that the house's foundation had sustained substantial damage. William contended that Julie knew that repairs were necessary at a considerable expense, noting that the repair bids ranged from $88,000 to $124,000. William maintained that the "house [was] a liability and [was] uninsurable due to the extensive damage" and that he "should not be forced to solely assume a significant marital liability." In light of the purported damage to the house, William requested that Julie pay for half of the estimated repairs in the amount of $50,000.[1]

¶13 In the Pre-Trial Order, William again set forth his list of potential lay and expert witnesses, as well as his proposed exhibits and what he believed to be the issues of fact for the court to decide, stated as follows:

1. Whether or not Julie was aware of the damage to the foundation at the time of her proposed Property distribution.
2. The cost of necessary repairs to the Hobson Street home.
3. The value of the Hobson Street home considering the structural damage.

¶14 After an unsuccessful settlement conference and multiple continuances, the parties commenced a bench trial on July 8, 2014. As the trial commenced, counsel for Julie argued for the first time that William's statements about the value of the home made during the March 16, 2012 dissolution hearing constituted judicial admissions. Julie asserted that

William should be precluded from introducing evidence that contradicted those statements. Over William's objection and after hearing brief arguments from the parties, the court ruled in Julie's favor, thus preventing William from introducing any evidence to "prove, disprove, or contradict" the alleged market value of the home as discussed during the March 16, 2012 dissolution hearing. The court then heard testimony from Julie and William and took the matter under advisement.

¶15 On October 6, 2014, the court issued its Findings of Fact, Conclusions of Law and Final Decree of Dissolution adopting the previous order issued on April 3, 2012. The court concluded that William's 2012 statements regarding the appraisal values of the Hobson Street house constituted judicial admissions, and therefore all evidence related to the house's condition obtained after the March 16, 2012 hearing was properly excluded. William appeals.

## STANDARDS OF REVIEW

¶16 Where error has been predicated on a judicial admission, our cases have applied the standard of review for findings of fact and conclusions of law. *Weaver v. State*, 2013 MT 247, ¶ 19, 371 Mont. 476, 310 P.3d 495. Whether a statement constitutes a judicial admission depends upon the circumstances of each case. *Weaver*, ¶ 19. Whether a statement is one of fact or law, for the purpose of determining if the statement should be considered a judicial admission, is a question of law we review for correctness. *Bilesky v. Shopko Stores Operating Co., LLC*, 2014 MT 300, ¶ 10, 377 Mont. 58, 338 P.3d 76. A district court's

---

[1] William submitted the signed Pre-Trial Order as Appendix D in his opening brief. The record does not indicate that the Pre-Trial Order was actually filed with the court.

determination of whether a statement constitutes a judicial admission is reviewed for an abuse of discretion. *Bilesky*, ¶ 10.

## DISCUSSION

¶17 *1. Whether the District Court erred in ruling that William's statements made during the March 16, 2012 dissolution hearing constituted judicial admissions.*

¶18 William asserts that his statements made during the March 16, 2012 dissolution hearing regarding the value of the Hobson Street house do not meet the criteria for a judicial admission. William argues that his statements neither were unequivocal statements of fact nor made for the purpose of conceding the truth of an alleged fact. We agree.

¶19 In *Bilesky*, we reiterated the definition of and requisite criteria for a judicial admission. "A judicial admission is an express waiver made to the court by a party or its counsel 'conceding for the purposes of trial the truth of an alleged fact.'" *Bilesky*, ¶ 12 (quoting *Kohne v. Yost*, 250 Mont. 109, 112, 818 P.2d 360, 362 (1991)). "The main characteristic of a judicial admission is the conclusive effect upon the party making the admission; no further evidence can be introduced by the party making the admission to prove, disprove, or contradict the admitted fact." *Bilesky*, ¶ 12. "A judicial admission is not binding, however, unless it is an unequivocal statement of fact, as opposed to a conclusion of law or the expression of an opinion." *Stevens v. Novartis Pharms. Corp.*, 2010 MT 282, ¶ 74, 358 Mont. 474, 247 P.3d 244; *see also Kohne*, 250 Mont. at 113, 818 P.2d at 362 ("For a judicial admission to be binding, it must be an unequivocal statement of fact.").

¶20 In order to constitute a judicial admission, a party's statement must meet the following criteria:

1) There must be a statement made to the court.
2) The statement must be made by a party, or the party's attorney.
3) The statement must be a statement of fact, and not a statement of opinion or law.

*Bilesky*, ¶¶ 13-14 ("[t]he three elements listed above provide a threshold determination of whether a statement may be considered a judicial admission; a determination which we review for correctness"). This Court examines the "entire context in which the statements were made before determining whether a statement constitutes a judicial admission." *Bilesky*, ¶ 14.

¶21 In determining that William's statements were judicial admissions, the District Court concluded:

> Will stated the value of the home and the equity therein was between $235,000 and $265,000. These estimates were based upon two separate appraisals Will obtained from two different appraisers in order to consolidate his construction loan and mortgage.
>
> This Court found that Will agreed to enter into a contract with a bank based upon an appraisal for the fair market value of the property at $265,000. The appraisal for $265,000 occurred just five months before the hearing held on March 16, 2012.
>
> . . .
>
> [T]his Court recognized that Will's March 16, 20[12] statements to this Court concerning the value of the house were judicial admissions. This Court found that a judicial admission of fact regarding the value of the home had a conclusive effect and prevented Will from presenting further evidence to disprove that admitted fact.
>
> This Court held that the Supreme Court's decision [in *Steyh*], dated July 2, 2013, stated that Will should have an opportunity to be heard and to present his argument, but not that he should be allowed to present evidence gathered after the date of the dissolution proceeding . . . .

9

¶22　In examining the "entire context in which the statements were made," *see Bilesky*, ¶ 14, we cannot agree that William's 2012 statements constitute judicial admissions. The statements made by William, acting pro se, were in response to the court's inquiries related to the financing of the house and Julie's potential equity in the property. William *thought* one appraisal "came in right around 235," but that he "could prove [this] to the Court" on another occasion. William did not recall "who the other appraiser was," but that it "came in at 265." It is obvious from a review of the transcript that William was taken by surprise by the court's inquiry and was struggling to recall the details of appraisal reports prepared months earlier.

¶23　As noted above, "[a] judicial admission is an express waiver made to the court by a party or its counsel 'conceding for the purposes of trial the truth of the alleged fact.'" *Bilesky*, ¶ 12. Further, a judicial admission is binding only if it is "an unequivocal statement of fact." *Stevens*, ¶ 74. William's sketchy recollection of the details of two earlier appraisal reports was neither a concession of the truth of an alleged fact nor unequivocal. We therefore conclude the District Court erred in ruling that his statements made during the March 2012 dissolution hearing constituted judicial admissions.

¶24　*2. Whether the District Court erred in precluding William from presenting evidence related to the value of the real property at issue based upon these alleged judicial admissions.*

¶25　In *Steyh*, we found that the District Court had "surprised" William by not affording him "advanced notice that it might award Julie more than she had requested in her petition and by not giving William a meaningful opportunity to contest the distribution of assets

10

before rendering a final judgment." *Steyh*, ¶ 12. Consistent with this finding, the court on remand permitted the parties to conduct additional discovery. In their Pre-Trial Order, the parties agreed that the sole issue before the court was the equitable division of the house located on Hobson Street.

¶26 At the July 2014 trial, William was prepared to introduce his evidence regarding the value of the Hobson Street property when Julie's last-minute judicial admission argument was raised and accepted by the court, thus derailing William's opportunity to "contest the distribution of assets," as the remand had directed. Because we have concluded that the District Court erred in determining that William's statements made during the March 2012 hearing were judicial admissions, and because we previously observed that William was entitled to a meaningful opportunity to contest the distribution of assets before judgment is rendered, we conclude the District Court erred in precluding William from presenting evidence related to the value of the real property at issue.

¶27 At the July 2014 hearing, the District Court expressed concerns regarding evidence related to the condition of the house that was gathered after the March 2012 dissolution hearing as, generally speaking, "a district court must determine the net value of the marital estate at or near the time of dissolution, prior to dividing the property." *Lewton v. Lewton*, 2012 MT 114, ¶ 15, 365 Mont. 152, 281 P.3d 181 (citation omitted). However, we also recognize the need to address the unique circumstances presented here. *See Schwartz v. Harris*, 2013 MT 145, ¶ 18, 370 Mont. 294, 308 P.3d 949 ("Generally, valuing the property near the time of dissolution results in equitable apportionment, but unique circumstances may call for valuation at a different time.") (citation omitted); *In re Marriage of Krause*, 200

11

Mont. 368, 379, 654 P.2d 963, 968 (1982) ("When one considers the many different kinds of marital property and the associated problems of valuation it is obvious that a hard and fast rule should not be imposed.")

¶28 Without question, it would have been preferable for the parties to present evidence on the valuation of the Hobson Street property at the dissolution hearing on March 16, 2012. However, they did not know there would be a need to present such evidence. It was only after the District Court's ruling, prompting William's motion for relief from judgment, and his ensuing appeal and our reversal of the District Court's decision, that the parties had reason to develop evidence concerning the value of the Hobson Street property.

¶29 The witnesses prepared to testify at the July 2014 trial concerning the condition of the Hobson Street property examined the home in October 2013, approximately 19 months after the March 2012 hearing. As this is the evidence of the home's condition that is nearest in time to the date of the dissolution, we conclude it is appropriate for the court on remand to receive the evidence reflecting the condition of the home and the need for repairs as of or before October 2013. Evidence of the appraisals of the property that pre-date the dissolution hearing may also be introduced by either party. In addition, any later estimates can be received, provided that the estimate of damage and cost of repairs relates back to the status and value of the property as of or before October, 2013.

¶30 We therefore reverse and remand so as to allow the parties to present their respective evidence and arguments with respect to the value of the Hobson Street property. We reiterate, as we did in *Steyh*, that "nothing in this opinion limits a district court's broad

discretion to distribute the marital assets in a manner that it deems equitable to both parties under § 40-4-202, MCA." *Steyh*, ¶ 13.

## CONCLUSION

¶31 For the foregoing reasons, we reverse and remand the decision of the District Court with instructions to provide the parties with a "meaningful opportunity" to present their respective positions in regards to the value of the Hobson Street property.


/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ JIM RICE
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER