FILED

02/28/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0195

DA 16-0195

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 42N

IN RE THE MARRIAGE OF:

MALINDA A. GROMMET,

        Petitioner and Appellee,

  v.

DEAN G. GROMMET,

        Respondent and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                    In and For the County of Flathead, Cause No. DR-12-723B
                    Honorable Robert B Allison, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                David B. Cotner, Anna C. Conley, Datsopoulos, MacDonald,
                & Lind, P.C., Missoula, Montana

        For Appellee:

                P. Mars Scott, P. Mars Scott Law Offices, Missoula, Montana

                            Submitted on Briefs:  November 30, 2016

                                    Decided:  February 28, 2017

Filed:

                                      _____
                                              Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Dean Grommet (Dean) appeals from the March 15, 2016 Findings of Fact, Conclusions of Law and Decree of Dissolution entered in the Eleventh Judicial District Court, Flathead County, dissolving his marriage to Malinda Grommet (Malinda). We affirm.

¶3 Dean raises thirteen issues on appeal, many of which contain sub-issues. In general, Dean argues that the District Court incorrectly considered the parties' premarital relationship when determining an equitable distribution of the marital estate and that the District Court's distribution of the marital estate is inequitable and not supported by substantial evidence.

¶4 Dean and Malinda met in California and began dating in 1991 when Malinda was twenty-three and Dean was thirty-six. At the time, Malinda was managing a retail store in Newport Beach and Dean was self-employed and owned Acralight, a business which manufactured skylights. In 1991 or 1992 they moved in together. Dean owned two homes in Huntington Beach, California, and the couple lived in Dean's homes. Malinda maintained the homes by performing general housekeeping duties, laundry, cooking, buying groceries, paying bills, and working with contractors to make improvements to

2

the homes. The parties commingled their funds while they were together in California. In 1996, Dean prepared a codicil to his Will wherein he left his entire estate to his parents, his sister, and Malinda in equal shares. Dean also wrote a letter in 1997, prior to going on a hunting trip, stating his intention to take care of Malinda for her life and providing Malinda with specific instructions on how to distribute his estate in the event he died. Malinda, similarly, named Dean as a beneficiary on her investment account.

¶5 In 1992, Dean and his sister, Michelle Costi (Michelle), purchased 13,425 acres in Wyoming which is identified as Grey Rocks Ranch (Ranch). The Ranch is located in a rural area and had two homes, a main house and a guest house, both of which were uninhabitable. Dean contributed $200,000 and Michelle contributed $100,000 toward the initial investment, with the remaining balance of approximately $650,000 borrowed from Farm Credit Services. Michelle did not work on the Ranch nor did she contribute any more money after her initial investment.

¶6 Between 1992 and 1999, Dean and Malinda traveled to Wyoming to make improvements on the Ranch, including remodeling the two uninhabitable houses, landscaping, and adding a building for ranch machinery and equipment. In 1999, Dean and Malinda moved to the Ranch and, over the years, purchased and sold various tracts of land surrounding the Ranch. Dean and Malinda paid for the land purchases by encumbering the Ranch with mortgages. By 2006, the Ranch comprised approximately 22,240 acres. During the time Dean and Malinda worked and lived on the Ranch, they paid off over $2,100,000 of their mortgages and also made partial payments to Michelle of $267,500. By 2005, the Ranch was free and clear of mortgages.

3

¶7    Dean and Malinda developed several businesses at the Ranch, including Gro-Mor Diversified, LLC, a tree planting and landscape business. They offered outfitting and hunting services and Malinda maintained a "City Slickers" dude ranch operation which included hosting guests, managing employees, preparing meals, transporting clients to the airport, housekeeping, shopping, laundry, and advertising for the business. Malinda helped build snow fences to control blizzards, manned fire trucks and fought forest ranch wildfires, cleared tumble weeds from miles of fencing, performed reclamation work on numerous acres of land subsequent to an oil pipeline rupture, constructed stone masonry columns to enhance the appearance of the Ranch, and installed and maintained Mexican tile pavers in the two homes. Malinda performed general home and grounds maintenance to the Ranch, including predator management, landscaping, watering, and mowing. She managed a herd of buffalo containing 75 head, chartered planes and flew over the Ranch and other ranches to locate buffalo, and managed and maintained a cattle lease operation. Malinda did not receive a wage or salary for her work at the Ranch and she did not pay Social Security.

¶8    After nine years of living together, Dean and Malinda married in 2000. Shortly after they were married they began investing in gold and silver coins. By February of 2011, Dean and Malinda had 1,396 ounces of gold coins, and 4,697 silver coins.

¶9    In 2006, Malinda and Dean sold the Ranch for $8,500,000 million to the United States military, realizing a gain of over $6,900,000 on the property. The Ranch proceeds were put into a Fidelity account in Dean's name. Dean and Malinda also liquidated Gro-Mor and created DMG Land, LLC, to hold future ranch income from grass leases the

4

couple still held after the sale of the Ranch. With a portion of the Ranch proceeds, Dean and Malinda bought a home in Whitefish, Montana, for $3,125,000 and held the property as tenants by the entirety. Dean and Malinda constructed a $1,000,000 addition to the house to display hunting trophies, which included nearly 100 animals including an elephant. In 2008, Dean purchased an adjacent lot to the Whitefish home to preserve the home's panoramic view. Also in 2008, Dean and Malinda started their home business, Creations Studio, LLC, specializing in the production of antler art and furniture.

¶10 Dean and Malinda separated in February, 2011, following marital differences. Malinda moved into an apartment in Whitefish and Dean continued to live in the marital home. Shortly after their separation, Dean created a machine manufacturing company with Josh Boyce which they named Acutech, LLC. Acutech offers high quality professional welding and fabrication services, custom metal fabrication, and blacksmithing for small and large scale jobs. Dean initially invested $233,478 of marital funds into Acutech consisting of assets transferred from Creations Studio, which Dean assigned a value of $143,150. Dean also assigned a value of $90,328 for equipment and services already provided. In 2015, Acutech purchased Boyce's fifty percent interest in Acutech for $37,500 making Dean Acutech's sole owner. The real property where Acutech does business is jointly owned by Dean and Malinda, as well as the residential rental located on the property. By the time of trial, Dean had spent over $1,700,000 million of marital funds on Acutech in an attempt to build the business which, until recently, had been struggling. At trial, Dean testified that Acutech was operating in the black and was likely to become a successful company.

¶11    In January of 2013, Malinda received a $6,000 per month interim support order to cover her expenses until the divorce was final.  Dean did not wish to make these payments in cash to Malinda so he agreed to liquidate some of the gold coins to cover the payments.  Dean also liquidated some of the gold coins to cover Acutech expenses and expenses of the marital home.  Malinda testified that she wanted to sell the marital home to save money, but that Dean refused.

¶12    Trial was held on December 3 and 4, 2015.  Dean and Malinda submitted post-trial documents and the District Court, on March 15, 2016, entered its Findings of Fact, Conclusions of Law and Decree of Dissolution.  The District Court valued the assets of the estate; determined that Dean and Malinda had each made pre-marital contributions to the marital estate and therefore included all property in the marital estate; and divided the marital estate equitably between Malinda and Dean.  Although Malinda requested maintenance, the District Court determined its final distribution of the marital estate gave Malinda sufficient assets and that maintenance would not be equitable.  Malinda also requested that her attorney fees be paid by Dean which the District Court similarly declined noting that Dean has likewise incurred substantial attorney fees.  The District Court awarded Malinda an equalization payment, to be determined by counsel upon the parties' exercise of certain contingencies, because Dean was to receive a significantly greater share of the marital assets.

¶13    "We review a district court's division of marital property to determine whether the court's findings of fact are clearly erroneous and the conclusions of law are correct." *In*

*re Funk*, 2012 MT 14 ¶ 6, 363 Mont. 352, 270 P.3d 39. We must look at each case individually, taking into account the unique circumstances presented. *Funk*, ¶ 6.

¶14 "A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence or if, upon reviewing the record, [we] are left with the definite and firm conviction that the district court made a mistake." *In re S.T.,* 2008 MT 19, ¶ 8, 341 Mont. 176, 176 P.3d 1054. "Absent clearly erroneous findings, we will affirm a district court's division of property and award of maintenance unless we identify an abuse of discretion." *Funk,* ¶ 6.

¶15 Dean argues that the District Court incorrectly considered the parties' premarital contributions when determining an equitable distribution of the marital estate. This Court has explained that all property held by the parties must be considered by a court in equitably dividing the parties' marital estate. *Funk,* ¶ 34. In evaluating the premarital contributions of the spouse not holding title to the asset, the court must consider the factors set forth in § 40-4-202(1), MCA, which provides, in part:

> In dividing property acquired prior to the marriage . . . the court shall consider those contributions of the other spouse to the marriage, including:
> (a) the nonmonetary contribution of the homemaker;
> (b) the extent to which such contributions have facilitated the maintenance of this property; and
> (c) whether or not the property division serves as an alternative to maintenance arrangements.

We have recognized that premarital contributions of one spouse to property owned by the other spouse prior to the marriage are to be considered by the court in equitably dividing the marital estate. *See In re Marriage of Clark*, 2003 MT 168, 316 Mont. 327, 71 P.3d 1228. This principle is consistent with those set forth in *Funk.* Further, while

7

commingling is not listed as a consideration in § 40-4-202(1), MCA, our precedent recognizes that commingling of premarital assets is a consideration when equitably dividing the marital estate. *In re Marriage of Stufft*, 286 Mont. 239, 245-46, 950 P.2d 1373, 1377 (1997); *see also Danelson v. Danelson,* 253 Mont. 310, 318, 833 P.2d 215, 220 (1992).

¶16    Here, the District Court properly included in the marital estate assets held in Dean's name because Malinda made significant premarital contributions through her support of Dean and her work enhancing the value of the particular assets.  Dean admits that Malinda's work on the Ranch, the various marital homes, and the numerous businesses all contributed to the enhancement, value, and preservation of the parties' numerous assets.  The District Court properly considered the length of the parties' relationship; Dean's commingling of pre-acquired property with income earned by Malinda and Dean during their relationship; Dean changing title to grant Malinda an interest in properties and not maintaining exclusive control or a separate interest in the properties; and Malinda's dedicated contribution to enhancement and developing the properties, as well as her homemaker contributions.  We conclude that the District Court did not err by including premarital property in the marital estate.  The District Court recognized Malinda made significant contributions to particular assets which helped to develop, expand, maintain, and enhance the value of the business ventures Dean undertook throughout the marriage.

¶17    Dean makes numerous assertions of error by the District Court which generally may be described as the District Court's findings and conclusions are not supported by

8

substantial evidence and are incorrect. A trial court enjoys wide discretion in equitably apportioning the marital estate pursuant to the factors set forth in § 40-4-202, MCA. *Funk*, ¶ 28. Absent clearly erroneous findings, we will affirm a district court's division of property and decision regarding maintenance unless we identify an abuse of discretion. *Funk*, ¶ 6. After consideration of the record, we conclude that substantial evidence supported the District Court's distribution of the marital estate and that the court's findings are not clearly erroneous. The District Court addressed every factor and consideration which it is required through the provisions of § 40-40-202, MCA.

¶18 More specifically, the District Court considered that Dean and Malinda were together for a total of twenty-four years: married for fifteen years, four years of separation, and nine years before getting married. The District Court addressed the parties' age, health, station, occupation, vocational skills, and employability finding that both were in good health, successful and industrious workers, and capable at continuing to remain gainfully employed.

¶19 The District Court addressed the amount and sources of income, finding that Acutech, which was awarded to Dean, had gross sales of $1,512,184 and that the company would pay rent to Dean and Malinda of approximately $3,600 per month. Dean receives $750 per month in rents from a residence on Acutech's property. Malinda has gross profits from her jewelry business of $21,000. Dean's ability to earn more than Malinda is well-documented in the record.

¶20 The District Court adequately addressed marital assets and liabilities. The District Court included all premarital property and found each party was responsible for their

9

personal debt and was awarded their individual accounts with the exception of Voya, which was to be distributed equally. Interest in the Whitefish marital home was equally divided, but Dean was to pay expenses associated with the marital home because he chose to stay there. The District Court determined each party was responsible for their own living expenses. The District Court also recognized that Dean was to receive a larger share of the marital estate and attempted to offset the inequity through other distributions to Malinda and an equalization payment.

¶21 The needs of the parties were also addressed by the District Court. The District Court recognized that each party was to receive substantial assets upon which to build independent and meaningful lives.

¶22 The District Court considered that its property distribution was in lieu of granting Malinda maintenance and declined Malinda's maintenance request because adequate property was granted to her. If less property were to be awarded to Malinda, the District Court's distribution of the marital estate would no longer be equitable or there would be fewer assets available to Malinda.

¶23 The District Court considered the dissipation of the value of the respective estates, noting that it was cognizant that Dean, subsequent to the economic restraining order, liquidated substantial marital assets to create Acutech. Although finding that it did not appear Dean was motivated to dissipate the marital estate, the District Court accounted for Dean's actions following separation through its distributions to Malinda. As noted in numerous findings of fact, the District Court recognized Malinda's significant

10

contributions to the marital estate; it is evident the District Court endeavored to equitably and fairly distribute the estate.

¶24 Based upon our review of the record, the District Court considered all the testimony and evidence of the parties in dividing the marital estate equitably. There is substantial evidence that supports the District Court's valuations of the assets. We nonetheless address Dean's arguments.

¶25 Dean argues that the District Court fabricated assets that were ultimately calculated into the marital estate. However, the District Court is not required to accept Dean's valuation of particular assets but may, as the trier of fact, choose which valuations it finds credible. Here, the District Court awarded Malinda half of the Acutech receivables and rent because Acutech is still in business and is growing. Dean is employed full-time with Acutech and the business has been operating for the last five years. Thus, Acutech's assets are not fabricated and the District Court's valuation and distribution of Acutech is supported by substantial evidence. It is worth noting that, as a joint owner, Malinda was entitled to receive half of the rents from Acutech during litigation, which she did not receive.

¶26 Dean argues that the District Court incorrectly awarded Malinda 50% of the gold coins that existed at the time of the separation. Dean had spent a substantial amount of the coins in his business and to support his decision to remain at the marital home, rather than sell it. The District Court did not abuse its discretion in choosing when to value the gold coins and recognizing that Malinda was entitled to an equal share of the total amount of the gold coins. The District Court had the unenviable task of distributing the

11

entire estate equitably. In light of other distributions made by the District Court in which Dean benefitted, we cannot find that the District Court abused its discretion in choosing to equitably divide the gold coins at the time of separation.

¶27 Dean claims that monies and assets advanced to Malinda and subsequent stipulations regarding the advancement of funds to pay Malinda's living expenses should be credited to Dean. Dean also claims that Malinda should be equally responsible for funds Dean used to pay expenses associated with the marital home. However, by this same reasoning, Malinda could also claim that she should be credited gold and cash Dean used to pay his living expenses for a home he chose not to sell during the proceedings. The District Court considered these factors and explained that Malinda resided in apartments in Whitefish and Columbia Falls and that Dean chose to invest $1,791,477 of marital funds, including part of the gold coins, into Acutech. The District Court properly considered the circumstances and actions of both parties, and distributed the marital estate equitably.

¶28 We have reviewed the entire record of the trial court proceedings and the comprehensive order entered by the District Court dissolving the parties' marriage and distributing the marital estate. The District Court, relying on the factors of § 40-4-202, MCA, *Funk*, and settled case law, correctly determined what assets were to be included in the marital estate and then equitably distributed the marital estate to Dean and Malinda. The District Court's interpretation and application of the law were correct and the District Court's findings of fact are not clearly erroneous. We affirm the District Court's March 15, 2016 Findings of Fact, Conclusions of Law and Decree of Dissolution.

¶29 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of relevant standards of review.

¶30 Affirmed.


/S/ LAURIE McKINNON


We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA


Justice Beth Baker, concurring and dissenting.

¶31 I concur generally in the Court's disposition of this appeal, with the exception of the distribution of the gold coins and Acutech receivable. Although district courts have broad discretion to equitably distribute the marital estate, the District Court's decision to value the Grommets' gold at the time of separation and the Acutech receivable at the time of trial results in a clearly erroneous double-counting of assets.

¶32 The District Court ordered Dean to pay Malinda half of the gold coins they owned at the time of separation. Consequently, all of the coins Dean liquidated in the years between separation and the trial must be deducted from his half of the coins they owned at separation. Dean maintains, and Malinda does not dispute, that he used some of the liquidated gold to fund his loans to Acutech, now represented in the dissolution as an

13

account receivable asset of the marital estate. Although the District Court's division of the coins means the loans effectively were made with Dean's share of the coins, the District Court still awarded Malinda half of the outstanding loans, further dividing Dean's share of the marital estate and giving a portion to Malinda.

¶33 In essence, the District Court double-counted a converted asset: first, it counted the gold coins owned at separation; and second, it counted the Acutech receivable at the time of trial, even though it was largely a product of liquidating the gold coins. The District Court could have avoided double-counting by valuing *at the time of trial* both the coins and the Acutech receivable. The proper time to value marital assets may vary from case to case, but as a general rule, "a district court must determine the net value of the marital estate at or near the time of dissolution, prior to dividing the property." *Carle v. Steyh*, 2015 MT 193, ¶ 27, 380 Mont. 48, 353 P.3d 488. I agree that the District Court did not abuse its discretion by simply dividing the coins rather than first assigning them a value. But the facts of this case, and the manner in which the District Court distributed the marital estate, require consideration of the value of both of these assets at the same point in time. I would therefore reverse and remand for division of the gold coins that were in the parties' possession as of the time of trial.


/S/ BETH BAKER